Boyer v. Dively, et al.

Francis Boyer and James Charley, Jr., by their next friend M. W. McGee, Respondents, *vs.* Michael Dively, Adm'r *de bonis non*, with will annexed, of William Gillis, and Bernard Donnelly and F. M. Black, Ex'rs of the last will of Mary A. Troost, Appellants.

1. *Practice, civil—Pleading—Wills, contests concerning—Petition, sufficiency of —Heirs not mentioned.*—A petition, which alleges that plaintiffs are the children of a decedent who left a will, in which no mention is made of them, and prays for distribution according to law, is sufficient. The authority of the Circuit Court to order distribution in such cases attaches before any distribution of the estate, and consequently it is not necessary to allege in the petition that the legacies have been paid and the estate distributed. (Levins vs. Stevens, 7 Mo., 90, affirmed.)

2. *Wills, contests concerning—Issues may be framed and submitted to the jury.* —Under our statute (Wagn. Stat., 1041, ? 13) in contests concerning the construction or validity of wills, the court may frame issues and take the opinion of a jury upon any specific questions of fact involved, although such verdicts are not binding upon the court.

3. *Marriages with Indians, what sufficient.*—Under the customs of Indian tribes, when a messenger was sent by the intended bridegroom to the parents of the bride, with a proposal to take her as his wife according to the Indian custom, and with presents to the parents, and the parents had signified their acceptance, and the bride, with their consent, had returned and cohabited with the suitor, these facts would constitute a valid marriage.

4. *Marriages with Indians—Marriages according to Indian customs valid, although the tribe might reside in the State of Missouri—Constitution of the United States.*—The Constitution of the United States, and the statutes passed in pursuance thereof, recognize the Indians as a peculiar people, having relations to the Government totally different from citizens of the States. And although located within State lines, yet, so long as their tribal customs are adhered to and the Federal Government manages their affairs by agent, they are not regarded as subject to the laws, at least so far as marriages and inheritance are concerned. The Constitution of the United States especially authorizes Congress to regulate commerce with the Indian tribes as with foreign nations. The customs and laws of the Indians then prevailed among the remnants of tribes located in this State in 1829 and 1830, and would continue unless positively changed by the Legislature of the State, and no such legislation has ever been attempted. A marriage, therefore, among them according to their custom, would for the purpose of inheritance, at least, be valid.

5. *Wills, contests concerning—Instructions—Legitimacy—Death of parents and offspring—Presumption.*—Where the parents and their offspring are all dead, the presumption is in favor of the legitimacy of the offspring; and in contests concerning wills where the question arises, it is proper to instruct the jury to that effect.

*Appeal from Johnson Circuit Court.*

*F. M. Black, with Brown & Case,* for Appellants.

I. There is no cause of action stated in the petition. It is not stated, that the former executrix or the present administrator have, or ever had, anything for distribution, nor that there will be anything after the payment of debts. It does appear, that this suit was commenced within three months after the death of the testator, and before the debts could be ascertained, or any distribution had. The petition describes no property, real or personal, nor can any judgment for money or property be had. There is no subject matter stated upon which the Court can render any judgment or decree known to the law. (Garner vs. McCullough, 48 Mo., 318 ; Riddle vs. Boyce, 13 Mo., 532 ; Smith vs. Turner, 4 Ired. Eq., 437.)

II. Again : The 47th section of statute of wills (Wagn. Stat., 1370,) under which it is claimed this suit is brought, furnishes no authority for such a proceeding as this. That section expressly provides for cases where the devisees, legatees or heirs have received something which they are required to refund.

No adjudicated case has been found where intestacy has been declared, when no specific relief was asked and no defined judgment or decree could be given.

III. Nothing short of an agreement between two persons of opposite sexes to live together during their lives as man and wife, to the exclusion of all others, and without the power to dissolve the same at their own volition, constitutes a marriage as known to our laws and Christian communities. (Bish. Mar. and Div., 32 ; Self. Mar. and Div., 1 ; Schouler on Dom. Rel., 22) ; and defendant's third instruction should have been given.

IV. The general rule, that a marriage, valid where celebrated, is valid everywhere, is a matter of comity of nations and States ; and when an alleged marriage does not contain the essential elements of a marriage as known to our laws, it ought not to be enforced. It is no marriage. (Roche vs.

Washington, 19 Ind., 53; Hyde vs. Hyde, Law Rep., 1st Courts of Prob. and Div., 130; Story on Con. Law, 7 e, sec. 114.)

While the forms of the contract, the rights and ceremonies for a due celebration, are governed by the law of the place of the contract or celebration, yet the essentials of the contract depend upon the *lex domicilii*, the law of the country in which the parties are domiciled, and in which the matrimonial residence is contemplated. (Story on Con. Laws, (7th Ed.,) 124. *b*; Brock vs. Brock, 7 Jur., N. S., 422; Also, reported in 9 House of Lords Cases, p. 192.)

Such marriages, where the contract does not contain the essential element, as measured by our laws, and where the parties or either of them, or the territory in which they reside, are subject to State laws, are held no marriages at all. (Roche vs. Washington, 19 Ind., 53; State vs. Ta-cha-na-tah, 64 N. C., 614.)

*Philips & Vest, Tichenor & Warner, with D. A. N. Grover*, for Respondents.

I. The form of proceeding adopted by plaintiffs is the proper one. The descent of plaintiffs, and all the facts necessary to give them their right, were denied by Mary A. Troost, who, as executrix and sole legatee, was in possession of the estate of Wm. Gilliss, deceased, and proceeding to execute the will according to its terms, when this suit was commenced. This suit is instituted under the 9th section of 2 Wagn. Stat., (ch. 145,) in regard to wills, and which was the 30th section of the chapter on wills in the statutes of 1835. (Hill vs. Martin, 28 Mo., 78; Block vs. Block, 3 Mo., 407, Hockensmith vs. Slusher, 26 Mo., 237; Beck vs. Metz, 25 Mo., 71; Bradley vs. Bradley, 24 Mo., 311; Levin vs. Stephens, 7 Mo., 90; Guitar vs. Gordon, 17 Mo., 408.)

II. The court properly submitted the issues of fact to the jury. (Wagn. Stat., 1040–1, §§ 12, 13; Morris vs. Morris, 28 Mo., 117; Weil vs. Kume, 49 Mo., 158: Looker vs. Davis, 47 Mo., 140; Curtis vs. Sutter, 15 Cal., 263; Weber vs. Marshall, 19 Cal., 447; McCarty vs. Edwards, 24 How. Pr., 236.)

III. The evidence clearly shows a valid marriage between William Gilliss and Kahketoqua, the mother of Nancy, and grand-mother of plaintiffs. (Johnson vs. Johnson, 30 Mo., 88.)

IV. General reputation and cohabitation are evidence of marriage. (Wm. Johnson vs. Wm. Johnson, 1 Des., 595; Weaver vs. Cryer, 1 Dev. Law, 337; Fetts and wife vs. Foster, 1 Tayl., 72; Allen vs. Hall, 2 Nott & McCord, 438; Ford vs. Ford, 4 Ala., 144; Wall vs. Williamson, 8 Ala., 48; Wall vs. Williamson, 11 Ala., 838; Morgan vs. McGhee, 5 Humph., 13; Chesseldine's Lessee vs. Brewer, 1 Harris & McHenry, 152; Fornshill vs. Murray, 1 Bland Ch., 482; Taylor vs. Shewwell, 4 B. Mon., 576; Crozier vs. Gand and Wife, 1 Bibb., 357; Stover vs. Boswell's Heirs, 3 Dana, 232; 1 Penrose & Watts, 450; Johnson vs. Johnson's Adm'r, 30 Mo., 85; Buchanan vs. Harvey, 35 Mo., 276; Johnson vs. Johnson, 46 Mo., 597; 23 N. Y., 91.)

V. Marriages, among Indian tribes, must be regarded as taking place in a state of nature; and if according to the usage and customs of the particular tribe, the parties are authorized to dissolve it at pleasure, the right of dissolution will be considered a term of the contract. This applies to marriages between persons of pure Indian blood, or between white and Indian races. (Wall vs. Williamson, 11 Ala., 839; Johnson vs. Johnson's Adm'r, 30 Mo., 72; Morgan vs. McGhee, 5 Humph., 13.)

VI. In Wall vs. Williamson (*supra*), which decision is quoted and approved by this court in Johnson vs. Johnson, it is held that though the act of 1832 extended the jurisdiction of the State of Alabama over the Indian territory; yet it does not take from a marriage among the Choctaws, made according to their customs, dissoluble quality at the pleasure of the parties; nor can the asking a reservation under a treaty, nor the acceptance of a patent from the United States, nor the continued residence and cohabitaion in the State for more than five years, after the ratification of the treaty, and the departure of

most of their tribe to the west, have that effect. Their usages and customs are abolished only by positive law.

VII. Abandonment of wife, according to the custom of a tribe, has the same effect as a decree of divorce. (Wall vs. Williamson, 8 Ala., 48.)

VIII. It is clear, both upon authority and upon general principles of public policy and natural equity, that when the legitimacy is called in question, especially after the death of the children, and after a great lapse of time, every reasonable presumption is indulged in favor of legitimacy. The jury are bound to make every intendment, in favor of the legitimacy of the children, and not necessarily excluded by the proof. (Johnson vs. Johnson's Adm'r, 1 Des., 595, *supra*.)

IX. This suit is brought under section 9, (Wagn. Stat., ch. 145,) and is in accordance with Hill vs. Martin, 28 Mo., 81; Guitar vs. Gordon, 17 Mo., 408.

X. When a question of legitimacy becomes involved in controversy, in a court of chancery, it is said to be usual to make up an issue and have the matter tried by a jury. Fornshill vs. Murray, 1 Bland Ch., 485; Johnson vs. Johnson's Adm'r, 1 Harris & McHenry, 152, *supra*.)

The appellants say respondents bring their suit under section 47 of chapter on wills, and that said section contemplates cases only, where devisees, legatees or heirs have received and are required to refund. This court has passed upon this very point, against the position of appellants, in Levin vs. Stephens (7 Mo., 90); and the statutes of 1835, which that decision interprets, are identical with present statutes.

NAPTON, Judge, delivered the opinion of the court.

This suit was brought under the 9th and 47th sections of the act concerning wills (Wagn. Stat., 1365). The plaintiffs in their petition state that the decedent William Gilliss and Kahketoqua, an Indian wowan, child and daughter of Laharsh, a chief of the Piankeshaw nation or tribe of Indians, in the life-time of said Gilliss, and in the Indian country, about the year eighteen hundred and thirty, were married as hus-

band and wife, and for a long time thereafter cohabited and lived together as such husband and wife, that there was issue of said marriage, to-wit: Nancy Gilliss; that said Nancy was the only issue or child of said marriage; that said Nancy was twice married, first, to Joseph Boyer, who, having died, she was secondly married to James Charley. That plaintiff, Francis Boyer, is the sole child and issue of said first marriage, and plaintiff, James Charley, Junior, is the sole child and issue of said second marriage. That said Nancy afterwards, in the year 1862, died leaving plaintiffs her only children, issue and heirs. That said Kahketoqua, wife of said Gilliss and mother of said Nancy, died about the year 1863, having had an only child and issue, the said Nancy. That William Gilliss, said decedent, about the 19th day of July, 1869, died, having first made his will. That said Gilliss died, leaving, then living, no child or children or descendant of any child or children except plaintiffs, children, as before stated, of said Nancy and grand-children of said Gilliss, and so died leaving no widow, and that plaintiffs are the only heirs of said testator, Gilliss. Plaintiffs file the will of said Gilliss and make it part of their petition, and state that by said will defendant, Mary A. Troost, was appointed executrix thereof; that said Mary A. Troost caused said will to be admitted to probate in the Probate Court of the county of Jackson, and took out from said court letters testamentary as the executrix of said will, and was proceeding to administer the estate and execute said will according to the terms and provisions thereof; that by said will said testator devised and bequeathed to defendant, Mary A. Troost, the whole of his estate, real and personal, worth four hundred thousand dollars, except two nominal bequests of ten dollars each, which plaintiffs consent shall be paid.

Plaintiffs in their petition, further state that they are descendants and children of said Nancy, who was a child of said testator, William Gilliss; and although such descendants and children, they, the said plaintiffs, are not and were not, in or by said will or any of its provisions, named or provided for,

nor was nor is said Nancy, mother of plaintiffs, so named or provided for. On the contrary, said will makes no provision for them or either of them, nor are they or either of them mentioned or named in said will.

The petition further alleges, that by the law said testator, as to plaintiffs, his said grand-children, and their mother, said Nancy, not named or provided for in or by said will, is deemed to have died intestate, and that they, said plaintiffs, are entitled to such proportion of the estate of the testator, real and personal, as if he had died intestate, and that they are entitled to have the same assigned to them. And plaintiffs pray the court to declare and adjudge the intestacy of said William Gilliss as to plaintiffs, and for contribution accordingly from said defendant as executrix and legatee, and for such other and further relief as the court shall deem right and proper.

The suit, as originally brought, was against Mary A. Troost as executrix and also as legatee under the will. Defendant, Mary A. Troost, died, leaving a will by which she disposed of her whole estate, including that derived by her under the will of the said William Gilliss, and the suit was revived against her executors, the defendants, Donnelly and Black.

Defendant, Mary A. Troost, as executrix and also as legatee, made answer to the petition; and in the answer protested that plaintiffs' petition does not state facts sufficient to constitute a cause of action against defendant, as executrix, to be answered unto, nevertheless for answer, defendant in substance states that she had no sufficient knowledge or information to form a belief whether Kahketoqua was the child and daughter of Laharsh and says it is not true; and she denies that said testator, William Gilliss, and said Kahketoqua, in the lifetime of said William Gilliss and in the Indian country, about the year 1831, or at any other time, were married as husband and wife; denies that they for a long time thereafter or for any length of time, cohabited and lived together as husband and wife; denies that there was any issue of any marriage between Gilliss and Kahketoqua, and says if Kahketoqua did leave a child it was not lawfully begotten by the testator.

Whether said Nancy was twice married and had children as stated in the petition, she had no knowledge or information sufficient to form a belief; admits that Gilliss died testate as stated in petition; denies that plaintiffs (or either of them) are the heirs of testator Gilliss; says it is not true and denies that Gilliss left no legal heirs and representatives other than plaintiffs, and states the fact to be that Gilliss left surviving two legal heirs and representatives, and only two, to-wit: Sophia Gilliss and Mary Gilliss, both named in said will and provided for, and alleges that they are both living; admits her appointment by the will as executrix, that the will was admitted to probate, that letters testamentary were granted her, and that she assumed the burden of administering under the will; says she has no sufficient knowledge or information to form a belief whether plaintiffs are the children of said Nancy, and denies that said Nancy was or that plaintiffs are legal heirs of Gilliss; admits that plaintiffs are not named in said will and that the will makes no provision for plaintiffs or either of them; denies that by the law said testator, as to plaintiffs or either of them, died intestate, and denies that they are entitled to any portion or part of the property, real or personal or mixed, of which said Gilliss died seized or possessed, and asks to be discharged with costs.

To defendant's answer there was a replication by plaintiffs.

In the progress of the cause in the court below and on the application of Sophia Gilliss and Mary Gilliss, they were admitted as parties defendants. They filed answer in substance denying plaintiffs' right as asserted and claiming to be children and heirs of the testator Gilliss, and entitled to share in the estate, and charging that the defendant, Mary A. Troost, had, by fraud and other means, procured the making and execution of the will, by which they were each cut off with a bequest of the nominal sum of ten dollars.

Portions of the answer were ruled out and the remaining portions replied to by plaintiffs.

In the further progress of the cause, defendant Mary A. Troost having died, defendants Donnelly and Black as ex-

ecutors of her will were made defendants, and the suit revived against them. Defendants Donnelly and Black having entered their appearance, with the permission of the court, adopted as their answer the answer of their testatrix, Mary A. Troost.

In the further progress of this cause and at the trial term thereof, and before the jury was called or sworn, the court, on motion of plaintiffs, decided to have prepared for submission to the jury issues upon questions of fact, and under the directions of the court such issues were accordingly framed, and are as follows:

The court submits to the jury for trial the following issues: First. Were William Gilliss and said Kahketoqua, an Indian woman, married about 1830, and did they live together as husband and wife? Second. Did they, the said William Gilliss and Kahketoqua, have issue, and was the said Nancy Gilliss the issue and only issue of said marriage? Third. Are the plaintiffs, Francis Boyer and James Charley, Junior, the descendants and only descendants of said Nancy Gilliss? Fourth. Had the said Kahketoqua and Nancy Gilliss died before the commencement of this suit, to-wit: before the 15th day of October, 1869? Fifth. Did said William Gilliss, before the commencement of this suit, die, having first made his last will as stated in plaintiffs' petition? Sixth. Did said William Gilliss, the testator, die, leaving plaintiffs, Francis Boyer and James Charley, Junior, descendants of said Nancy, but in his last will omit and fail to name and provide for plaintiffs or either of them as descendants of said Nancy Gilliss, and did he also fail and omit to name or provide for said Nancy Gilliss? Seventh. Are the said Sophia Gilliss and Mary Gilliss children and heirs of William Gilliss, and are they both named and provided for in the said will?

The defendants objected to the submission of issues or questions of fact to the jury.

The court overruled defendants' objections, and ruled and decided to call a jury to try the issues of facts as framed, and thereupon a jury was called and sworn, and plaintiffs were

about to proceed with their evidence, when defendants, in writing, made and presented to the court their objections to any and all evidence offered or intended to be offered by plaintiffs.

The objections of defendants were by the court overruled, and plaintiffs proceeded with their testimony, and the trial of the issue progressed.

The evidence in the case is voluminous and conflicting. It is unnecessary to state it in detail, as the questions of fact were submitted to a jury, under instructions which will be noticed.

The main fact in dispute was as to the marriage of Gilliss with an Indian woman, named Kahketoqua, a daughter of a chief of the Piankeshaws. Gilliss it seems had a trading post at the James' Fork of White river, among the Delaware tribe of Indians, and had successively two wives, who were Delawares, and acknowledged the children of these wives. About the year 1829 or 1830, he proposed to Laharsh, a Piankeshaw chief, to marry his daughter, named Kahketoqua, and employed a man named Baptiste Peoria to negotiate the marriage. Laharsh was then living at Cowskin creek in the Indian country. This Baptiste Peoria, who is the principal witness for plaintiffs, visited Laharsh and reported favorably to Gilliss, and Gilliss and Peoria then went down to the settlement in Cowskin creek, and carried with them presents to the father and mother of Kahketoqua, which were satisfactory and returned with Kahketoqua. Nancy Gilliss, the mother of the plaintiffs, was the offspring of the cohabitation or marriage. There was evidence to show a subsequent recognition of Kahketoqua and her child, and there was evidence to the contrary.

The greater part of the evidence against the marriage is of a negative character, that is, it is of persons who were about Gilliss' domicile, but who knew nothing of the Piankeshaw woman as his wife. There seems to be no question, that the plaintiffs are descendants of Nancy Gilliss, who was reputed to have been the daughter of the Piankeshaw, wife of Gilliss.

In regard to the custom among the Indians in relation to marriages, there seems to have been but little conflict of testimony. The contract was arranged with the parents, and, if the presents were satisfactory, the parents usually assented.

Marriages were dissolvable at the option of the parties. In this case Gilliss sent Kahketoqua back, after living with her for a few months, promising however to recall her, when he returned from the East. There is evidence that he sent presents to her child, Nancy, the mother of the plaintiffs.

The first, second, third, fourth, fifth and sixth issues the jury found affirmatively and for plaintiffs, and the seventh issue they also found affirmatively.

On the trial, and after the evidence was closed, plaintiffs asked instructions as follows:

1st. "If the jury believe from the evidence, that the testator, William Gilliss, and said Kahketoqua, an Indian woman, about the year 1830 were married in the Indian country and according to Indian usages, and as husband and wife lived and cohabited together, and that there was issue of said marriage and cohabitation, and that said Nancy Gilliss was the issue and only issue of said marriage and cohabitation, and shall further believe that the plaintiffs, Francis Boyer and James Charley, Junior, are the descendants and only descendants of said Nancy Gilliss, and shall further find that said Kahketoqua and Nancy Gilliss died before the commencement of this suit, and shall further find that said testator died leaving his last will as stated in plaintiffs' petition, and so died leaving plaintiffs, Francis Boyer and James Charley, Junior, descendants of said Nancy Gilliss, and in his said last will failed and omitted to name or provide for plaintiffs as descendants of said Nancy, and did also fail and omit to name or provide for said Nancy Gilliss, then the jury must find for plaintiffs on the first six issues submitted to the jury."

2d. "If the jury believe from the evidence, that the testator, William Gilliss, took said Kahketoqua, an Indian woman, in the Indian country, about the year 1830, as his wife, according to the usages prevailing among the Indians, and co-

habited with said Kahketoqua, and had by her issue, as stated in the petition, then they must find the first issue for plaintiffs."

3d. "If the jury believe from the evidence, that the said William Gilliss, about the year 1830, was married to an Indian woman named Kahketoqua, in the Indian country, according to Indian usages, and had by her Nancy Gilliss, as the issue and only issue of said marriage, such issue is legitimate, although the jury may believe, that by Indian usages said Gilliss had a right to abandon said Kahketoqua at any time after said marriage, then the jury must find the first two issues for plaintiffs."

4th. The court further instructs the jury, "if you should believe from the evidence, that Nancy Gilliss was the child of William Gilliss and an Indian woman named Kahketoqua, and shall further believe from the evidence that Gilliss, Kahketoqua and Nancy are all dead, the legitimacy of said Nancy being called in question, you should give every reasonable presumption in favor of her legitimacy not necessarily excluded by the evidence."

5th. It is admitted by the pleadings in this case, that William Gilliss died before the commencement of this suit leaving his last will, and it is further admitted by the pleadings that said William Gilliss, the testator, in his said last will failed and omitted to name or provide for plaintiffs as descendants of said Nancy Gilliss, and that he the said Gilliss did so fail and omit to name or provide for said Nancy Gilliss in his said last will.

6th. It being charged and alleged in the answers in this case that said testator, William Gilliss, left him surviving, two legal heirs, to-wit: Sophia Gilliss and Mary Gilliss, this is an admission by defendants of the legitimacy of said Mary and Sophia Gilliss.

All which instructions, from one to six inclusive, were given by the court, and excepted to by defendants, Donnelly and Black.

Plaintiffs also asked other instructions, which were refused by the court, and excepted to by plaintiffs.

Defendants asked instructions as follows:

1st. "The court instructs the jury that as there is no controversy between plaintiffs and defendants as to the fifth and seventh issues submitted to them by the court, it being admitted that, as to the fifth issue, William Gilliss died before the commencement of this suit, he having first made his last will, and, as to the seventh issue, that Sophia Gillis and Mary Gillis are children and heirs of said William Gilliss, and are both named and provided for in the said will, the jury will find said issues in the affirmative, and as to said issues return the following verdict: ' We, the jury, find the fifth and seventh issues, submitted to us by the court, in the affirmative.' "

2nd. "Although the jury may find the third, fourth and sixth issues submitted to them by the court in the affirmative, and may find as to third issue, that plaintiffs, Francis Boyer and James Charley, Jr., are the descendants and the only descendants of said Nancy Gilliss; and as to the fourth issue that said Kahketoqua and Nancy Gilliss died before the commencement of this suit, on the 15th day of October, 1869; and as to the sixth issue, that said William Gilliss, the testator, did die leaving the plaintiffs, Francis Boyer and James Charley, Junior, descendants of said Nancy, but in his last will did omit and fail to name or provide for plaintiffs or either of them as descendants of said Nancy Gilliss, and did also fail and omit to provide for said Nancy Gilliss, yet their so finding said third, fourth and sixth issues in the affirmative must in no wise control or influence their finding as to the said first and second issues, and the jury may so find said third, fourth and sixth issues, or any or all of them, in the affirmative, and yet may still find first and second issues in the negative for the defendants."

3rd. "The court instructs the jury that although the jury may believe from the evidence, that said Gilliss and Kahketoqua were actually married according to the usage and custom of the Indians, and did thereafter live and cohabit together

as husband and wife for five or six months, and that said Nancy was the issue of such cohabitation, and that plaintiffs are the only descendants of said Nancy, and that after such cohabitation said Gilliss sent said Kahketoqua back to her tribe ; yet unless the jury further find from the evidence, that at the time of such marriage said Gilliss and Kahketoqua did mutually contract and agree to become and be husband and wife so long as they both should live, to the exclusion of all others, by a mutual obligation, which during the said life-time of the parties neither one by his or her own volition or act could dissolve, then the jury are bound to find said first and second issues in the negative."

4th. "Although the jury may believe from the evidence that said William Gilliss did take the Indian woman, Kahketoqua, to his house at James Fork Trading Post, about the year 1830, and did cohabit with her for four to six months, and during that cohabitation did beget of her body the child Nancy, and that the plaintiffs are the only issue of said Nancy ; yet if the jury further believe from the evidence, that said William Gilliss was, prior, during and subsequent to said year 1830, a citizen of the State of Missouri, residing within this State, and that the tribe of the Piankeshaw Indians, of which said Kahketoqua was a member, was at that time living within this State, and that Laharsh, the father of Kahketoqua, and others of his family and a few other families, temporarily crossed over the line of this State, into the Seneca Indian Territory, on a hunting trip, intending, after the hunt was over, to return to their tribe in this State, and that whilst in said Seneca Indian country, said Gilliss crossed over the line of this State to the camp of said Laharsh, in said Seneca Indian Territory and then and there, according to the usage and custom of the Piankeshaw Indians in case of marriage, made presents to the parents, Laharsh and wife, and took said Kahketoqua, and immediately thereafter went with her, her mother and brother, to his house at James Fork Trading Post, in this State, and there cohabited with her for several months, and then sent her mother and brother back to their tribe, and did not there-

after live with or treat her as his wife, then in law, there was no marriage betwen said Gilliss and Kahketoqua, and the jury are bound to find said first and second issues in the negative."

5th. "Although the jury may believe from the evidence, that in the Fall or Winter of 1829, William Gilliss took the Indian woman, Kahketoqua, in the Indian country, across the line of this State, and there cohabited with her in this State, for four or five months, when they separated, and she went to her people, and that they were thus married in accordance with the usage and customs among the Piankeshaw Indians, and by such cohabitation, there was issue; still if you believe that at the time Gilliss took Kahketoqua, she was only temporarily across the line with her father, on a hunting expedition, and her people and Gilliss lived in this State of Missouri, that by such usage and custom, either party had the right to separate at any time, and take another man or woman, and that the man had the right to have two or more such wives at one and the same time, then there was no marriage between the said Gilliss and Kahketoqua, as is required to be shown by plaintiffs in this case, and you will find the first and second issues in the negative."

6th. "Although the jury may believe from the evidence, that said William Gilliss did go from his house in Missouri to the camp of Laharsh and his wife, the father and mother of Kahketoqua, a Piankeshaw Indian woman, in the Seneca Indian Territory, and did then and there make such presents to them as were usual and customary among said Piankeshaw Indians in case of marriage, and did thereafter take said Kahketoqua, her mother and brother, to his house at James Fork Trading Post, and did there live and cohabit with her for several months, and up to the spring of the year, and during such cohabitation did beget of the body of said Kahketoqua the said Nancy, and did afterwards, in said spring of the year, and before the birth of said Nancy, send said Kahketoqua, her mother and brother, back to their tribe, and did not thereafter live or cohabit with her as his wife; yet these facts alone

do not necessarily constitute an actual marriage between said Gilliss and Kahketoqua; and unless the jury find that the plaintiffs have affirmatively proved to the satisfaction of the jury, that the said William Gilliss and Kahketoqua did then and there actually contract and agree, each with the other, to become and to live together as husband and wife, and did thereafter, in pursuance of such contract and agreement, cohabit together, not merely for casual and temporary sexual commerce and gratification, but as husband and wife, for the purpose of that relation for an indefinite time, then the jury are bound to find said first and second issues (in the negative) for the defendants."

7th. "Unless the jury believe from the evidence, that William Gilliss and Kahketoqua were actually married, and that there was issue of such marriage, you will find the first and second issues in the negative, and in order to constitute marriage, they must have mutually agreed to be and to live together as husband and wife for an indefinite period; that cohabitation and children thereof does not constitute marriage, and if such cohabitation is a casual commerce between the sexes, or for temporary purposes only, it is not even evidence of marriage, but in order to be evidence of marriage they must not only have lived together as man and wife, but must have held themselves out to the world as sustaining that honorable relation towards each other."

8th. "The jury are instructed that if they believe from the evidence, that any witness or witnesses have sworn intentionally falsely to any material fact or facts in the case, then the jury are authorized to disregard and reject the entire testimony of such witness or witnesses."

The first, second, sixth, and eighth of which instructions asked by defendants the court gave, but refused the third, fourth, fifth, and seventh.

Defendants in due time, after the verdict of the jury was returned into court, which was for the plaintiffs, filed their motion in arrest of judgment, and therein assigned grounds as follows: 1st. The petition does not state facts sufficient

to constitute any cause of action in plaintiffs against defend-ants, or to entitle plaintiffs to the relief prayed for in their petition or any other relief whatever. 2d. Upon the record said judgment is erroneous. 3d. The court has no jurisdic-tion over the subject matter of the pretended action. 4th. The court erred in permitting plaintiffs to introduce any evi-dence against the objection of defendants, when the petition does not state facts sufficient to constitute any cause of ac-tion in plaintiffs against defendants, and the court had no jurisdiction over the subject matter of the pretended action.

Defendants also, in due time, filed in writing their motion for a new trial, and assigned therein grounds as following: 1st. The court erred in framing and submitting said issues to the jury. 2d. The court erred in admitting improper, illegal, in-competent and irrelevant evidence on the part of the plaintiffs against the objections of defendants. 3d. The court erred in rejecting and excluding proper, legal, competent and relevant evidence offered by defendants, on the objections of plaintiffs. 4th. The court erred in giving the instructions numbered one, two, three, four, five and six asked by plaintiffs, and given at their instance by the court. 5th. The court erred in refusing to give the instructions numbered three, four, five and seven asked by defendants. 6th. The finding of the jury on said issues is against the instructions of the court and con-trary to law. 7th. The finding of the jury on said issues is against the evidence and the weight of evidence in this cause. 8th. The finding of the jury is against the law and evidence.

The court below gave judgment and made decree as follows:

Now at this day came the parties aforesaid, and the jury by their verdict made and returned here into court found the first six of the issues submitted to them by the court affirma-tively and for plaintiffs, and having also found the said sev-enth issue affirmatively, and it appearing also by the will of said testator, William Gilliss, that neither plaintiffs, Francis Boyer and James Charley, Jr., nor their mother, the said Nancy Gilliss or any or either of them were named or pro-vided for in said will of said testator, William Gilliss.

It is therefore considered adjudged and decreed that said testator, William Gilliss, so far as regards the said plaintiffs, Francis Boyer and James Charley, Jr., descendants of the said Nancy Gilliss, not provided for, and as to said plaintiffs, Francis Boyer and James Charley, Jr., is deemed in law to have died intestate, and as to said plaintiffs, the court doth declare said testator's intestacy.

And the court doth further consider, adjudge and decree that said plaintiffs, as the children and descendants of the said Nancy Gilliss, are entitled to such proportion of the estate of said testator, William Gilliss, real and personal as if he had died intestate. And the jury having found that said testator died leaving also as his children and heirs at law, the said Sophia Gilliss and Mary Gilliss named and provided for in said testator's will, it is further considered, adjudged and deemed, that said plaintiffs, Francis Boyer and James Charley, Jr., as children and descendants of the said Nancy Gilliss, deceased, and heirs at law of the said William Gilliss, are entitled and have right to one child's share, to-wit: the one equal undivided third part and interest in the estate of said testator, William Gilliss, real and personal, and that the same ought to be and shall be assigned to them by the defendants, and by the said Probate Court of Jackson County. And the court doth further consider and decree that said plaintiffs recover against the defendants their costs in this behalf expended to be levied of the share and interest in the estate of said Wm. Gilliss of the said Mary A. Troost under the will, in the hands of said Michael Dively, administrator *de bonis non* of the said estate unadministered, and of the estate and assets of said Mary A. Troost, deceased, in the hands of said Bernard Donnelly and Francis M. Black, executors of the last will of said Mary A. Troost, unadministered, except so much of said costs as may have been occasioned by the said Sophia Gilliss and Mary Gilliss Rogers, which shall be taxed against them, and for which judgment is given against them.

The first question raised in this case, is as to the form of the action. It is insisted that the proceeding is premature,

and that no specific relief is asked. No property, real or personal, is specified, and no subject matter upon which a judgment could operate.

This question was raised in the case of Levins vs. Stephens, (7 Mo., 91,) under a statute which was substantially in the terms of the present act. The 47th section of our present law (Wagn. Stat., p. 1370) is a mere copy of the 33rd section of the Revised Code of 1835 and contains the same word "received," which gave occasion to the discussion and decision in that case, from which we have no disposition to depart.

The second objection taken here, is to the action of the court, in submitting issues to a jury. The 13th section of art. 9 of our Practice Act (Wagn. Stat., 1041) provides that the court in cases of the character of this, may take the opinion of a jury, upon any specific question of fact involved, by an issue made up therein for that purpose. Although this court has determined that such verdicts are not binding on the court, yet no objection is perceived to the course adopted in this case.

The main questions, however, arise out of the instructions under which the case was submitted to the jury; and these instructions, it will readily appear, are intended to follow the law, as stated by this court, in the case of Johnson vs. Johnson, 30 Mo., 72.

The facts in the present case, it is true, are materially different from the facts in the case of Johnson vs. Johnson; but so far as the existence of a marriage is concerned, the evidence in this case was greatly stronger than in the other. There was no evidence of the marriage of Col. Johnson and the daughter of Keokuk, but cohabitation and the birth of three children. But if the testimony of Baptiste Peoria is to be credited (and of that the jury were to judge) there was not simply a cohabitation between Gilliss and Kahketoqua, but probably quite as formal a marriage as was customary among the Indians. A messenger or interpreter was sent by Gilliss to the parents, who lived some sixty or seventy miles

south of the trading post on James Fork, to ascertain if Gilliss' proposals would be acceptable to the father and mother, and upon a favorable response, Gilliss immediately started with his messenger or agent down to Cowskin, with pack mules, carrying presents of blankets, beads, shawls, etc., to the father and mother of the proposed bride. He immediately returned with Kahketoqua, and her mother and brothers accompanied her to the trading station, thereby indicating an approval by all the family of the arrangement.

This was, undoubtedly, strong evidence of an Indian marriage, in which all the witnesses agree no ceremony was required, religious or otherwise, and in which the main feature is the consent of the parents of the proposed wife, and their acceptance of the presents offered.

But it is insisted that this marriage was of no validity, by the laws of Missouri, and that in 1829 or 1830, the Piankeshaw Indians were citizens of this State, and subject to our laws. It seems from the testimony, that the Piankeshaws and Weas and Delawares and Shawnees were removed from Missouri, anterior to the alleged marriage; but that Laharsh, who was a Piankeshaw Chief, remained in the neighborhood of Cowskin Creek, perhaps for the purpose of hunting.

The Constitution of the United States, and the statutes passed in pursuance thereof, undoubtedly recognized the Indian tribes as a peculiar people, having relations to the government totally different from citizens of the States. Although located within the State lines, yet so long as their tribal customs are adhered to, and the Federal Government manages their affairs by agents, they are not regarded as subject to the State laws, so far at least, as marriage, inheritance, etc. are concerned. The cases of Morgan vs. McGhee, (5 Humph., 13,) and Wall vs. Williamson, (11 Ala., 826,) establish this proposition. Indeed the Constitution of the United States especially authorizes Congress to regulate commerce with Indian tribes, as it does with foreign nations. The customs and laws of the Indians, then, prevailed among the remnants of tribes located here in 1829 and 1830, and would con-

tinue unless positively changed by the legislature of the State. No such legislation was attempted, and it is useless to inquire if it had been, whether it would have been valid.

The first instruction is particularly objected to. That instruction directed the jury, if Gilliss, Kahketoqua and Nancy are all dead, to give every reasonable presumption in favor of the legitimacy of Nancy, not necessarily excluded by the evidence. This doctrine is asserted by the court in Johnson vs. Johnson, and supported by the authorities there cited. The jury had a right to be instructed on this point. The legitimacy of Nancy is a material point in this case, and as she was dead, and her mother and reputed father, it was necessary to tell the jury what the presumption of the law was.

It is useless to examine the instructions in detail. They are manifestly a mere repetition of positions which the court adopted in Johnson vs. Johnson, and the only question is, whether we will review and overturn the principles of that case.

We have no disposition to do so and therefore affirm the judgment; the other judges concur.