JOE EYSTAD v. W. F. STAMBAUGH.
GEORGE FARWELL, JR. v. SAME.
FRED PODTBURG v. SAME.[1]

October 7, 1938.

Nos. 31,676, 31,677, 31,678.

[1]Reported in 281 N. W. 526.

*Murphy, Johanson & Winter,* for appellant.
*T. J. Mangan* and *Clayton A. Gay,* for respondents.

JULIUS J. OLSON, JUSTICE.

Three men died as the result of injuries received in a collision between the automobile in which they were riding as guest passengers and a large cattle truck owned and driven by defendant. Administrators of their respective estates brought separate actions to recover damages under the death by wrongful act statute. The cases were tried together, resulting in verdicts for the mentioned administrators as plaintiffs. Defendant's blended motion for judgment notwithstanding or new trial was denied, and he appeals from that order. The three cases have also been submitted together here.

From the evidence adduced the jury could find the following facts: The accident happened sometime between 3:30 and 4 o'clock on the morning of June 7, 1936, upon state highway No. 28 immediately west of Morris. There was dense fog so that travel at the time and place mentioned was extremely dangerous insofar as visibility was concerned. The passenger car was proceeding westerly, defendant's truck easterly, on this highway, which is more than 25 feet in width with shoulders about nine feet wide on its north side and about seven feet on the south. When the driver of the passenger car reached a point near where the accident occurred he observed lights approaching him from the west, some 200 feet distant. Immediately upon observing the oncoming lights he drove

his car over onto the north shoulder, *i. e.*, to his right, and then stopped. His testimony is that his lights were burning and were in good condition. His claim is that defendant drove his truck at an unreasonable rate of speed in view of the heavy fog then prevailing, something like 40 miles or more per hour, and that defendant's truck collided with the passenger car on the north side of the road. The force of the impact was terrific; every person in the car was rendered unconscious by the impact. The three passengers died within a few hours. The car in which they rode was pushed backward at least 40 feet. Defendant, too, was badly shocked but regained his mental equilibrium in a few minutes. We have only the two drivers as eyewitnesses to the accident. Their claims conflict to some extent, but there is no dispute that the place of accident was upon the north side of the highway and considerably beyond the center line.

For defendant it is claimed that the reason he swung to his left and onto the wrong side of the road was that he was faced with a sudden emergency arising by reason of an unlighted car having been left upon his lane of traffic; that he did not discover it until he was within eight or ten feet of it; that to avoid running into it he swung sharply to his left; that immediately upon passing that car he swung back to his right but before being able to get back to his own lane of traffic met with the passenger car, which he claims was unlighted and in motion; that by reason of the facts mentioned he was not guilty of actionable negligence, hence that there should be no recovery. It is appropriate to remark that the driver of the passenger car saw no car in defendant's traffic lane, although he saw defendant's lights at least 200 feet away. Many people who came upon this scene shortly thereafter saw nothing of this car, and what became of it is left in a fog of mystery.

■ From what has been stated it seems clear that a fact issue was presented in respect of defendant's negligence. If the jury accepted as true, as they evidently did, the testimony of the driver of the passenger car, and if that car was lighted with adequate lights as claimed by its driver, then clearly the jury could find that

defendant should have seen the stalled car in his pathway in time to avoid making the left-hand turn. Similarly, even if that car were obscured because of the fog, it would seem that the lights of the oncoming automobile from the opposite direction would likewise afford notice to defendant that a car was approaching from the other direction. We think, without further discussion on this phase of the case, that a jury question was presented and that the verdicts are sustained by the evidence.

■ The court carefully instructed the jury in respect to defendant's emergency claim. Among other things the court said:

"Some collisions or accidents happen when no one is to blame, when no one is at fault, and if you find the collision in this case was one for which no one was to blame, then the defendant is not liable in this case.

"If you find the collision in this case was the result of an unavoidable accident, that is, an accident which the defendant could not have avoided by the use of the degree of care known under the circumstances in which he was placed because of the sudden emergency which confronted him, the parked car he claims he suddenly discovered in his lane of travel, the emergency not having been caused or produced by himself, then the defendant is not liable. * * *

"Where the operator of a motor vehicle is by a sudden emergency not produced or caused by himself placed in a position of imminent danger to himself or otherwise without sufficient time to carefully determine with certainty the best course to follow, he is not held to the same accuracy of judgment as is required of him under ordinary circumstances, and he is not liable for damages caused by his car if an accident occurs even though a different course of action might be more judicial, and all providing he exercised ordinary care in the stress of circumstances to avoid the accident."

We are of the view that the instructions of the court on this phase are at least as favorable to defendant as the law permits. The rule we have repeatedly applied is (Cosgrove v. McGonagle, 196 Minn. 6, 13, 264 N. W. 134, 138):

"In such situation the law is that 'one, suddenly confronted by a peril, through no fault of his own, who in the attempt to escape does not choose the best or safest way, should not be held negligent because of such choice unless it was so hazardous that the ordinarily prudent person would not have made it under similar conditions.' "

■ A more difficult problem is presented in respect to certain assignments of error relating to admission and exclusion of offered evidence. Plaintiff's counsel sought to establish under the *res gestae* rule certain statements alleged to have been made by one of the men (Mark Farwell), who was so badly hurt in the accident that he died shortly thereafter. A witness for plaintiff who arrived at the scene shortly after the collision testified as follows:

"Well, when we got out there he flagged us with his coat, and I stopped and we got, went out to see who—he says, 'Do something for us; we are badly hurt and dying.' And before—

Mr. Johanson: "Move to strike out the answer as incompetent, hearsay, self-serving declaration, no showing that he knew who the party was, never seen him before.

The Court: "Objection overruled.

Mr. Johanson: "Exception.

By Mr. Mangan: Q. "All right, Oscar; and then what did you people do? Is there any further—just tell the jury where you went, if there is any further conversation.

A. "He said there is somebody come with lights against him; he turned off to the side and stopped, stopped there. And I asked him if they had any lights on; he said 'Yes.'

Mr. Johanson: "I move to strike out the answer now, incompetent, no part of *res gestae*, purely narrative, not responsive, your Honor; the deceased had no audience, nothing to do with the collision itself, purely narrative.

The Court: "The part of the answer showing what this witness asked him and what Mr. Farwell pleaded as to lights is stricken, and the jury will disregard it. The rest may stand.

Mr. Mangan: "Exception to the strike.

Mr. Johanson: "Exception.

By Mr. Mangan: Q. "Well, Mr. Hendrickson, after this conversation what did you folks do?

A. "We turned around, went back to town looking for help."

We conclude that as the record stands error is not apparent. We think the ruling of the court eliminated from the jury's consideration anything that could be said to be of harm to defendant's version. If the jury heeded the instruction, and we must assume that it did, there is very little left of the testimony. All that remains as to the last quoted portion of the testimony is that the driver "turned off to the side and stopped there." On that phase there is no real issue, for it is conceded that the passenger car was at or near the extreme northerly part of the highway, at least ten feet from the center line, where the collision occurred.

■ Defendant strongly urges that counsel for plaintiffs on the oral examination of the members of the jury was guilty of such professional misconduct as to require us to hold that the court erred in not declaring a mistrial upon defendant's motion so to do. This is what occurred: Plaintiffs' counsel asked that the court permit him to call defendant for cross-examination under the statute "for the purpose of laying a foundation for examining the jury as to their qualifications." This was done in the court's chambers and not in the presence of the jury. After that examination the court stated that it was "satisfied that there is insurance in this case," and stated to counsel: "I will permit plaintiffs' counsel to question the jurors as to their connection with the Autoists' Mutual Insurance Company." We think the record shows that defendant had insurance, but there may be a question as to whether there is liability in fact. Defendant left his copies of the summons and complaint with the insurer's agent or representative, and its attorneys prepared the answers interposed for him. Before trial they notified defendant that the insurer denied liability and that they were not going to act in his behalf. The trial proceeded with defendant's present counsel, who were associated with them when the answers were prepared and served. When court and counsel re-

turned to the courtroom plaintiffs' attorney made this statement in the presence of the 18 men and women from whom the jury was selected: "It is proven here that the Autoists' Mutual are interested in the defense of this case." Counsel for defendant immediately objected, and the court promptly ruled: "The statement made by counsel is improper. The jury will disregard it." That the ruling of the court was immediately effective is apparent from the record. Insurance was not again mentioned by anyone.

The impropriety of the statement is obvious. Counsel knew before he made it to what extent the court had given him permission to go. In addition to asking questions along the lines permitted by the court, he made the quoted statement. We cannot censure too strongly this act of impropriety. However, the court did everything possible to correct the evil. Not only was he then conversant with the issues made respecting this item but also had before him the 18 men and women from whom 12 were to be selected to sit. Being a man of long years of experience, it is unlikely that he would have passed up the opportunity to grant defendant's motion for a mistrial at that stage if he thought real harm was done or that evil effects would follow the remarks of counsel. Later, upon defendant's motion for judgment or new trial, the matter was again considered. That the court gave this careful consideration is evident from a reading of a memorandum attached to the order here for review. While we strongly condemn plaintiffs' counsel for the statement made, yet under the circumstances here appearing we are not prepared to say that the court erred in refusing to grant a new trial.

■ It is suggested that the verdicts are excessive. The highest verdict is $6,000 awarded the administrator in the Eystad case. He was a comparatively young man, 39 years of age, with an expectancy of 28.9 years, and left surviving his wife and six children, all aged less than 14 years. Farwell was 45 years of age, with an expectancy of 24.54 years, leaving a wife and four children all less than 16 years of age. Rahrlien was of the same age and had the same expectancy. He left eight children, five less than 18 years

of age. He was a widower. All these men were of good habits and health, had provided well for their families, and were actively engaged in their respective occupations. To say that these verdicts are so excessive as to require a reduction or the granting of new trials is obviously not for us to do.

There are other assignments of error, but we think these deserve no discussion.

Order affirmed.