FLORENCE L. THOIRS v. A. G. POUNSFORD AND OTHERS. RODERIC J. MacDONALD AND ANOTHER, APPELLANTS.[1]

June 20, 1941.

No. 32,765.

[1]Reported in 299 N. W. 16.

*Gillette, Nye, Harries & Montague,* for appellants.
*Murdoch & Hatfield* and *Abbott, MacPherran, Dancer & Zuger,* for respondent.

PETERSON, JUSTICE.

The only question is whether the court below erred in denying a new trial upon the ground that excessive damages were granted under the influence of passion and prejudice.

The decedent, Daisie Thoirs, was killed on October 25, 1939, as the result of a collision between the automobiles of the defendants Roderic J. MacDonald and Pounsford. Decedent was riding as a guest in the MacDonald car, which was being driven by the defendant Mabelle MacDonald. Pounsford's car was being driven by the defendant White. This action was brought by decedent's personal representative to recover for claimed wrongful death. Plaintiff recovered a verdict of $10,000 against the MacDonalds. The appeal is from the order denying the motion of the MacDonalds for a new trial.

Decedent had two sisters, who are the beneficiaries of this action. At the time of decedent's death she was 67 years old, her sister Miriam, 63, and her sister Florence, 60. All three were maiden ladies. They lived together in a house which they owned as joint tenants. Decedent contributed about $100 per month toward the maintenance of the household. The sisters made no contributions toward such expense. Miriam did the housekeeping. She had no income and was dependent on decedent. Florence received a pension of $492 a year as a retired schoolteacher. Besides maintain-

ing the home, decedent had made other contributions to her sisters. In 1938 she gave Florence $500 to pay into the teachers' retirement fund to enable her to get the pension. About six or seven years prior to her death she gave one sister an Alaskan seal and the other a Hudson seal coat.

At the time of death decedent had a life expectancy of 14 years according to the American Annuitants Mortality Table and of 10 years according to the American Experience Mortality Table. Florence had an expectancy of almost 18 years according to the first mentioned and 13.47 years according to the last mentioned tables. Miriam had no annuitant expectancy. Her expectancy was 11.67 years according to the American Experience Mortality Table. Experience has shown that annuitants live longer than non-annuitants.

Decedent had been a schoolteacher for many years and had retired on an annual pension of $1,201.10, which was paid in ten monthly installments of $120.11. She had additional income of $100 a year from a fraternal organization.

Decedent evidently was a healthy, vigorous woman. The doctor who examined her about one year prior to her death testified that her health was very good and that he found no evidence of degenerative disease.

Special damages of $531 were shown for hospital, medical, and funeral expenses. The net recovery for the beneficiaries was $9,469.

It is conceded, as the trial judge states in his memorandum attached to the order denying the motion for a new trial, that the trial was "unusually free from efforts to arouse the passions or prejudices of the jury."

As said in McKeown v. Argetsinger, 202 Minn. 595, 603, 279 N. W. 402, 407, 116 A. L. R. 398, "damages in wrongful death actions are measured by the pecuniary interest of the beneficiaries in the continuance of the life of the deceased. The calling of the deceased, his income therefrom, his health, age, probable duration of life, the amount of aid in money or services which he was accus-

tomed to furnish the beneficiaries, and perhaps other factors not now necessary to enumerate are to be considered." In short, the recovery is permitted as compensation for the deprivation of the reasonable expectation of pecuniary benefits that would have resulted to the beneficiaries from the continued life of the deceased.

That the amount of recovery is the maximum allowed under the statute is not important in considering whether the verdict is excessive. Paine v. Gamble Stores, Inc. 202 Minn. 462, 279 N. W. 257, 116 A. L. R. 407. The question is whether the verdict is fairly compensatory for the pecuniary loss.

The argument most stressed is that the verdict is excessive when compared with the verdicts in such cases as McKeown v. Argetsinger, *supra;* Eystad v. Stambaugh, 203 Minn. 392, 281 N. W. 526; and Symons v. G. N. Ry. Co. 208 Minn. 240, 293 N. W. 303. We said that the verdict in the Symons case was large. In the Eystad case, we simply held that the verdict was not excessive. In the McKeown case, a verdict for $10,000 was held not excessive for the wrongful death of a physician who had an expectancy of over 17 years and earned between $5,000 and $6,000 a year, of which he contributed from $40 to $60 a month to a son 28 years of age and a like amount to a daughter 20 years of age. That case furnishes no argument that the recovery here is excessive. In the Symons case, a verdict of $7,500 for the wrongful death of a man 67 years old who earned $140 per month, substantially all of which he devoted to the support of himself, his wife, and three dependent children, was held not excessive. In that case the decedent was the same age as the decedent here; but he was not an annuitant as was the decedent Daisie, with the resulting difference that Symons had an expectancy of four years less than the decedent here according to the mortality tables mentioned. Hence that case cannot be regarded as controlling here. There is nothing in the Eystad case which throws any light on the question before us.

Comparison of verdicts is not a satisfactory method for determining the reasonableness of an award in a particular case. There

is no standard verdict for a given case, and in the very nature of things there can be none. Each case has its own peculiar facts which control decision. In addition to the decedent's expectancy, each case involves a consideration of such variables as the decedent's character, health, habits, talents, prospects, earnings, contributions to his dependents, and many others which affect the amount of recovery and concerning which there is permissible difference of opinion among juries. Crouch v. C. G. W. R. Co. 172 Minn. 447, 216 N. W. 234. In the cited case, we sustained a recovery of $35,000 under the federal employers liability act for the wrongful death of a railroad employe 32 years of age earning $190 per month who left as dependents his wife and two children. Obviously, that case affords no basis for comparison here. Cases involving similar verdicts have persuasive weight depending on the closeness of the analogy, the issues involved, and the holding with respect to them.

Efforts have been made both to upset and to sustain the verdict by computations of expected contributions by decedent to the beneficiaries. The parties have attempted to estimate such contributions in various ways. The amount of recovery was necessarily based on an estimate both in respect to the periodical amounts of decedent's contributions and the expected duration of such contributions measured by decedent's life expectancy.

The evidence is that decedent and her two sisters shared equally in the benefits of her contributions for the support of the home. There were other contributions at prior times such as the money to get the pension and the fur coats. The cash contributions to the beneficiaries computed on the basis of the three sisters sharing equally in the benefits of the home amounted to approximately $66.66.

The duration of such expected contributions was not necessarily the period shown in the mortality tables. Mortality tables do not conclusively establish the life expectancy of a particular person. The trier of fact is not bound by them and may find that the life

expectancy of a particular decedent is greater or less than that shown in the tables. Mortality tables are received to show the probable life expectancy of the deceased. The tables are to be considered with the other evidence. The statement therein of duration of life expectancy may in the particular case be strengthened, weakened, or entirely destroyed by other evidence relating to the expectancy of the life under consideration. Some people far outlive the expectancy shown in such tables; others never attain it. The jury's calculation should be based not only on the estimated life expectancy shown in the tables but also on all factors which bear on the question, such as the decedent's health, habits, occupation, surroundings, and perhaps others. Paine v. Gamble Stores, Inc. 202 Minn. 462, 279 N. W. 257, 116 A. L. R. 407, *supra;* Scheffler v. M. & St. L. Ry. Co. 32 Minn. 518, 21 N. W. 711. Here, the expected duration of decedent's life was strengthened by evidence of her vigor, good health, and freedom from degenerative disease.

The recovery should be, as defendants argued orally, the present worth of the expected contributions. The determination of present worth need not necessarily be based on the legal rate of interest or the probable expectancy. Nor is there any requirement that the computation be made according to any doctrine of annuities or any other mathematical measurement. Louisville & Nashville R. Co. v. Holloway, 246 U. S. 525, 38 S. Ct. 379, 62 L. ed. 867; 25 C. J. S., Death, § 100, p. 1242.

The fact that decedent was under no legal obligation to support her sisters was no reason for denying a recovery. The expectation of pecuniary benefit may arise from the obligation or the disposition of the decedent to contribute to the beneficiaries. In either case, the deprivation of such expectancy is a loss for which recovery may be had. McKeown v. Argetsinger, 202 Minn. 595, 279 N. W. 402, 116 A. L. R. 398, *supra;* 16 Am. Jur., Death, §§ 236, 237.

We think that the verdict was not excessive. The gross expected contributions during the period of stated life expectancy of the

decedent not reduced to their present worth would have been in excess of $11,000. To this should be added the $531 special damages. Reduced to their present worth at the current rate of return on safe investments, which we are informed is about three per cent, the verdict would pay the beneficiaries $66.66 for 14 years and 7 months. According to this computation, the amount of the recovery practically coincides with the decedent's expectancy shown in the mortality tables. At the legal rate of six per cent, the period of payment would be extended to almost 20 years. But ordinarily the computation should be based on the rate of interest available on safe investments. Chesapeake & O. Ry. Co. v. Kelly, 241 U. S. 485, 36 S. Ct. 630, 60 L. ed. 1117, L. R. A. 1917F, 367; Annotation, 105 A. L. R. 237. Furthermore, the jury were permitted to find that decedent's expectancy might exceed that shown in the tables. The recovery is not out of line with present worth of the contributions which the beneficiaries might reasonably have expected to receive from decedent had she continued to live. The court did not err in denying the motion for a new trial.

Affirmed.

