## EDWARD L. ROGERS v. W. A. CORDINGLEY AND ANOTHER.[1]

June 12, 1942.

No. 33,129.

*Ryan, Ryan & Ryan* and *Edward L. Rogers,* for appellant.

*Abbott, MacPherran, Dancer, Zuger & Montague,* for respondent W. A. Cordingley.

[1]Reported in 4 N. W. (2d) 627.

HOLT, JUSTICE.

Action to recover damages for the death of plaintiff's decedent caused by the alleged wrongful and negligent acts of defendants. A verdict was directed in favor of defendants, and from the judgment entered thereon plaintiff appeals.

The facts as to which there is no dispute are these: Plaintiff's decedent, John Sullivan, was a tribal Indian residing on the Red Lake Indian Reservation in this state. So were defendants. On September 22, 1940, the decedent, 29 years old, was riding in his Ford coach, operated by defendant Loons, when it collided with a car operated by defendant Cordingley. The collision caused Sullivan's death. In the car was also Alice Sullivan, in the complaint alleged to be the surviving spouse of decedent, for whose benefit the action was brought. Alice was also a fullblood Indian of the Pillager band of Leech Lake and was married on March 17, 1932, to Charles Louis Smith, an Indian of the Red Lake band, by a justice of the peace located at Redby on the Red Lake Indian Reservation. They lived on the reservation, and two children were born to them. In 1934, Alice claims she divorced Smith according to the custom and usage of those tribal Indians and thereafter cohabited with one Sayers, with whom she had one child. She does not claim to have married Sayers. On May 17, 1939, Alice claims she married decedent. The day after his death she made a written statement as to how it occurred, signing it: "Mrs. Alice Smith." On October 7, 1940, Alice went to the Indian Agency and deposited eight dollars there as the first payment upon an action for divorce against Smith, then she went back to live with Smith and was living with him at the time of the trial.

The questions presented by this appeal are these: (1) Did the court err in sustaining an objection to the offer of plaintiff to prove that according to Indian custom and usage Alice divorced Smith in 1934 and married Sullivan in 1939 and was his wife at the time of his death? (2) If Alice was not the surviving spouse of Sullivan, did the court err in directing a verdict against plaintiff, the evidence showing that a sister survived Sullivan?

The trial court took the view that Alice, by being married by a state official, had contracted a marriage which could be dissolved only by death or a decree of court, the parties being domiciled in this state. We consider this view erroneous. All persons here concerned were tribal Indians living on Indian reservations. That they owned and rode in automobiles or were married by a justice of the peace in the reservation does not establish that they have abandoned their tribal relation and become citizens of this state, subject to its laws. In United States v. Quiver, 241 U. S. 602, 603, 36 S. Ct. 699, 700, 60 L. ed. 1196, the court said:

"At an early period it became the settled policy of Congress to permit the personal and domestic relations of the Indians with each other to be regulated, and offenses by one Indian against the person or property of another Indian to be dealt with according to their tribal customs and laws."

Hallowell v. Commons (8 Cir.) 210 F. 793, recognizes even polygamous marriages contracted by Indians according to their laws, and cites with approval from Ortley v. Ross, 78 Neb. 339, 110 N. W. 982, 983:

"Now, it is contended by appellants that, as the alleged marriage between the father and mother of the plaintiff was polygamous, it was neither valid in the state of Minnesota, where the parties then resided, nor in the state of Nebraska, to which they subsequently removed. This contention would be well founded if this marriage had taken place between citizens of the United States in any state of the Union. But a different rule prevails with reference to the marriages of Indians, who are members of a tribe recognized and treated with as such by the United States government; for it has always been the policy of the general government to permit the Indian tribes as such to regulate their own domestic affairs and to control the intercourse between the sexes by their own customs and usages."

Our own decisions are to the same effect. In United States ex rel. Davis v. Shanks, 15 Minn. 302, 304 (369), this court said:

"The Indians within our territory have always been considered and recognized by the United States as distinct political communities; and, so far as is essential to constitute them separate nations, the rights of sovereignty have been conceded to them. Worcester v. State, 6 Pet. 515, 8 L. ed. 483."

Earl v. Godley, 42 Minn. 361, 44 N. W. 254, 7 L. R. A. 125, 18 A. S. R. 517; La Framboise v. Day, 136 Minn. 239, 161 N. W. 529, L. R. A. 1917D, 571. From other jurisdictions we cite Kobogum v. Jackson Iron Co. 76 Mich. 498, 43 N. W. 602; Boyer v. Dively, 58 Mo. 510; Cyr v. Walker, 29 Okl. 281, 116 P. 931 (annotated in 35 L.R.A.[N.S.] 795). In the Cyr case, where a citizen of Canada was adopted by the Pottawatomie tribe of Indians and married one of the tribe and, after her death, married one not of that tribe, and, while living with her on the reservation or among the tribe, was divorced from this second wife according to the customs and usage of the tribe, the court held "that said divorce, recognized by the tribe as valid under its customs and usages, will be recognized and treated as valid by the courts of the state." The only decision that defendants refer to as supporting the directed verdict is Wells and Wells v. Thompson, 13 Ala. 793, 48 Am. D. 76. There the plaintiffs in an action in trespass to try title to land were the children of Mary Wells, who was not more than one-fourth of Indian blood, and William J. Wells, a white person. The defendant was in possession. Local law and practice cast the burden on the plaintiffs to establish a good title to the land. In this they failed; but it is true that the court expressed a reluctance to holding that a marriage contracted in accordance with the laws of a state could be dissolved by any other method than by a decree of a court or by death.

A marriage may not be dissolved by agreement of the parties or by the say-so of the one. This applies as well to common-law marriages as to those solemnized by a person thereto authorized by statute. But divorce and grounds therefor are prescribed by the state where the action is instituted and not at all by the law

of the state where the marriage was entered or contracted. So in the instant case as to these Indians, who always have resided on their Indian reservations, even if they had gone to another state and there married as prescribed by statute and then returned to their reservation in this state, we apprehend that they could then be divorced according to the usages and customs of the tribe. It was error to exclude the offer of proof made by plaintiff.

Even if Alice was not the surviving spouse of plaintiff's decedent, a sister survived him. It may be said that there was no testimony offered as to her loss from her brother's death. Mason St. 1927, § 3157, obligates brother and sister to support each other. Thoirs v. Pounsford, 210 Minn. 462, 299 N. W. 16. Furthermore, plaintiff was entitled to recover funeral expenses in addition to the damages to next of kin.

There is one ground upon which the judgment in favor of defendant Cordingley could be sustained, and that would be that the collision and Sullivan's death were due solely to the negligence of his servant Loons. Since the motion for a directed verdict was not based on that ground and it is not made in the brief, it is assumed that there was evidence of Cordingley's negligence proximately contributing to Sullivan's death. Of course, even if the death of Sullivan was due solely to the negligence of Loons, his servant, plaintiff ought to recover damages from him.

The record shows that Alice brought an action against these defendants to recover for injuries suffered by her in the collision. The two cases were consolidated for trial. The court in her case denied the motion of defendants for a directed verdict in their favor. The record does not show what became of that action.

The judgment is reversed and a new trial granted.