ANNA MALLINGER, administratrix of estate of Joseph E.
Mallinger, deceased, appellee, v. RICHARD W.
BRUSSOW, STAN KIEME, d/b/a Truck
Leasing Company, Jackson,
Michigan, et al.,
appellants.

No. 50079.

(Reported in 105 N.W.2d 626)

October 18, 1960.

Peters & Peters, of Fort Dodge, for appellants.

John H. Mitchell, of Fort Dodge, for appellee.

GARFIELD, J.—This is a law action by the administratrix of the estate of Joseph E. Mallinger, deceased, to recover actual damages of $151,500 and exemplary damages of $50,000 for his death. Following trial there was a jury verdict of $65,000 actual damages and $5000 exemplary damages. From judgment thereon for such amounts defendants have appealed.

Defendants are Richard W. Brussow, driver of a tractor-trailer which collided with the farm tractor operated by decedent, together with the owner and lessee of the tractor-trailer. For convenience Brussow may be considered as sole defendant. The tractor-trailer will sometimes be referred to as the truck to avoid confusing it with decedent's farm tractor.

Exemplary damages were sought and allowed on the theory defendant Brussow's conduct was wanton, reckless and grossly negligent.

Defendant asserts the allowance of actual damages is excessive and should be set aside or, in the alternative, a remittitur ordered or new trial granted. It is also asserted exemplary damages are not recoverable in an action like this and, in any event, the evidence does not support an allowance therefor. We consider first the claimed excessiveness of the actual damages allowed.

I.  Decedent was 37 and unmarried. The normal life expectancy of one that age is 32.59 years. He was a high school graduate. When his father died in 1939 he took over management and operation, on shares, of the 240-acre farm owned by his mother. He was still farming it when he was killed July 25, 1958. At the father's death there was a mortgage of $26,000 on the farm. Through the son's efforts this was paid off in 1947 or 1948. After this improvements were made on the farm buildings. He left an estate of $48,600 in personal property plus

life insurance of $10,000. His adjusted gross income for 1955 was $5170, for 1956 $2774, and for 1957 $378.

Decedent was an excellent farmer who worked extremely hard. He was "a good hog and cattle man" who "fed out" about 40 head of cattle each year. His sales of livestock in 1957 totaled $13,175. He was a good mechanic who could fix almost anything. He had good farm machinery and kept it in good condition. The farm was an A-1 farm, neat and well kept. His health was good and he was strong and rugged. His habits were good. He was happy and easy to get along with.

There seems to be no dispute about any of these facts. Several witnesses, apparently disinterested, testify to decedent's industry and ability as a farmer and producer of livestock.

██ The measure of recovery of actual damages for decedent's death is the reasonable present value of his life to his estate. By this is meant the present worth of the estate he would reasonably be expected to save as a result of his efforts between the time of his death and the end of his natural life if he had lived. To this may be added interest on the reasonable funeral expense for such time as it was prematurely incurred. Soreide v. Vilas & Co., 247 Iowa 1139, 1153, 78 N.W.2d 41, 49, and citations. The jury was so instructed here and no complaint is made of the instruction.

It was stipulated the reasonable funeral expense here was $1464. Also that the value of the farm tractor was $1000. It seems to be conceded recovery could be had for this last item.

██ ██ We have frequently pointed out the allowance of damages in a case like this is primarily for the jury and we should not interfere unless it clearly appears the verdict was prompted by passion or prejudice or other ulterior influence, is unconscionable, not warranted by the evidence, or the amount allowed fails to administer substantial justice. Hamdorf v. Corrie, 251 Iowa 896, 907, 101 N.W.2d 836, 843, and citations. We should not substitute our judgment for that of the jury. The mere fact we might, if sitting as triers of fact, have reached a lesser award does not justify our interference with the verdict. Ibid., Von Tersch v. Ahrendsen, 251 Iowa 115, 123, 99 N.W.2d 287, 292.

58

■ Many recent decisions point out that comparison of verdicts is not a satisfactory method of determining whether a particular award is excessive—each case must depend largely upon its own facts. Soreide and Hamdorf cases, supra, and citations therein; Ferris v. Riley, 251 Iowa 400, 411, 412, 101 N.W.2d 176, 183; Newman v. Blom, 249 Iowa 836, 851, 89 N.W.2d 349, 359, and citations.

■ "As a general rule we are and should be reluctant to reduce verdicts of juries undisturbed by the best judgment of the trial court who also saw and heard the witnesses." Newman v. Blom, supra. To like effect is Von Tersch v. Ahrendsen, supra (at page 123 of 251 Iowa, page 292 of 99 N.W.2d).

The award of $65,000 actual damages is the largest ever to come to us in a death case. Highest previous death award was $50,000 in Soreide v. Vilas & Co., supra (1956). We reduced that amount to $37,500. Defendant's counsel conceded in oral argument that plaintiff was probably entitled to more than the amount finally allowed Soreide's administratrix but said a remittitur should be ordered of part of the $65,000.

■ In computing the present worth of the future estate decedent would reasonably be expected to accumulate, the jury was not compelled to assume the amount now allowed could be safely invested at the so-called legal rate of five per cent throughout the period he probably would have lived. It might properly conclude such a rate would not be obtainable from safe investments, at least without exercise of financial experience and skill. It is common knowledge that as a rule the best and safest investments, and those which require the least care, yield only a moderate return. Chesapeake & O. R. Co. v. Kelly, 241 U. S. 485, 490, 491, 36 S. Ct. 630, 60 L. Ed. 1117, 1122, L. R. A. 1917F 367; Louisville & N. R. Co. v. Holloway, 246 U. S. 525, 528, 38 S. Ct. 379, 62 L. Ed. 867, 870; Southern Pacific Co. v. Klinge, 10 Cir., 65 F.2d 85, 87. See also Von Tersch v. Ahrendsen, supra, 251 Iowa 115, 122, 99 N.W.2d 287, 291; Thoirs v. Pounsford, 210 Minn. 462, 299 N.W. 16, 19; Miller v. Tainter, 252 Wis. 266, 31 N.W.2d 531, 532, 533; Annotations, 105 A. L. R. 234, 14 A. L. R.2d 485, 542.

Defendant's brief states the rule much as we have just ex-

pressed it. It says the loss to the estate is reduced to its present value by determining the sum which, if conservatively invested at compound interest, would equal the amount decedent would have accumulated during the remainder of his life.

There is some disagreement among the authorities as to whether, in computing present worth, simple or compound interest is used. Rivers v. Bay Cities Traction & Elec. Co., 164 Mich. 696, 128 N.W. 254, 259, 131 N.W. 86, 87. In most states the interest is compounded. Annotation, 14 A. L. R.2d 485, 542. No previous decision of ours upon this precise point has come to our attention.

If there is deducted from the allowance of $65,000 the value of the tractor and interest on the funeral expense for such time as it was prematurely incurred, the rest of the amount, invested at three per cent interest, compounded annually, would approximate $165,000 after 32.59 years. Compounded at four per cent it would approximate $225,000 at the end of such period. It is apparent that if only simple interest were used, the amount would be very much smaller.

■ We do not say the jury was bound to arrive at the actual damages by any such mathematical calculation. See 25 C. J. S., Death, section 100, page 1242; Thoirs v. Pounsford, supra, 210 Minn. 462, 299 N.W. 16, 19; Jacobsen v. Poland, 163 Neb. 590, 80 N.W.2d 891, 904, 905. We have frequently pointed out that the award of damages for wrongful death is necessarily at least somewhat of an approximation.

■ We are not persuaded we should interfere with the jury's award of actual damages, although it is very large. There is no showing it was the result of passion or prejudice unless this might possibly be inferred from the amount itself. Nor can we say the amount is unconscionable, not warranted by the evidence or fails to administer substantial justice.

Within eight or nine years after his father died decedent succeeded in paying off the mortgage of $26,000 on the farm. In his remaining 10 or 11 years he accumulated an estate of some $48,000 aside from life insurance. Under the evidence it is not at all improbable he would have accumulated from $165,000 to $225,000 between the time of his death and the end of his natural

life. To interfere with the amount of this verdict for actual damages would be to substitute our judgment for that of the jury, something we have repeatedly said we will not do.

The record in Soreide v. Vilas & Co., supra, 247 Iowa 1139, 1152, 78 N.W.2d 41, 49, is not comparable to the present record on the amount of actual damage. Although the normal life expectancy of a person of Soreide's age was 35.15 years, he had accumulated only his household furniture, a seven-year-old automobile and savings of $1115.

II. Defendant's contention that exemplary damages are not recoverable in an action like this is supported by statements in several of our precedents. DeMoss v. Walker, 242 Iowa 911, 915, 48 N.W.2d 811, 813, 814; Boyle v. Bornholtz, 224 Iowa 90, 93, 94, 275 N.W. 479; Armbruster v. Chicago, R. I. & P. R. Co., 166 Iowa 155, 163, 147 N.W. 337.

Plaintiff contends these decisions are irreconcilable with the holding and reasoning in Fitzgerald v. Hale, 247 Iowa 1194, 78 N.W.2d 509, and are not now authoritative. The holding there was that the executrix of a decedent could recover, in an action commenced after death, for pain and suffering incurred prior thereto. The opinion points out that the English Lord Campbell's Act and statutes based thereon create a new cause of action for wrongful death whereas our statutes provide for survival of existing causes of action and "the recovery is for such damages as deceased himself might have recovered had he survived the injury and brought the action, enlarged to include the wrongful death." (Page 1198 of 247 Iowa, page 511 of 78 N.W.2d)

It must be admitted there is some outside authority for the view that exemplary damages may be recovered in an action like this under a survival statute, provided there is evidence which would permit their allowance if the injured person had survived. Annotations, 94 A. L. R. 384, 400; 14 A. L. R.2d 485, 539. See 8 Drake Law Review 38, 39. In view of the conclusion reached in the next division hereof we find it unnecessary to decide the point.

III. We must agree with defendant that the evidence is insufficient to support an allowance of exemplary damages even if it were assumed they are recoverable in an action like this.

The jury was instructed, without objection, that exemplary damages might be allowed only if defendant's conduct was "wanton, reckless and grossly negligent." The quoted language was evidently taken from plaintiff's petition. The instruction defines this language as something more than negligence, an act done in such manner and under such circumstances as to show heedlessness, indifference and utter disregard and abandon as to what result may follow the act or the manner in which it is done. The instruction was apparently patterned after one in Sebastian v. Wood, 246 Iowa 94, 99, 66 N.W.2d 841, 844, which was upheld as against the contention malice is essential to the recovery of exemplary damages.

■ Since so far as appears no proper objection was taken to this instruction it stands as the law of the case. Neibert v. Stone, 247 Iowa 366, 368, 73 N.W.2d 763, 764, and citations.

■ We cannot find substantial evidence of such conduct as the instruction requires nor of any conduct which would warrant an award of exemplary damages. We deem it unnecessary to consider the precise nature of conduct which will justify such an award. We think nothing more than negligence is shown here.

The collision occurred about 9:30 a.m. on U. S. Highway 20 east of the city of Fort Dodge. Decedent's tractor and defendant's truck were both going west. The highway was paved, 24 feet wide. The center 18 feet was old pavement with a newer strip three feet wide on each side. The surface was dry and visibility good. Defendant and his helper each drove about five hours and then slept while the other drove. They had breakfast at Parkersburg, about 75 miles from the place of the accident, and left there about 7:20, with defendant relieving the other driver. They had left a place near Chicago about 9 the evening before, after the unit had a full Interstate Commerce Commission check and was approved. Its gross weight with the load was 51,670 pounds. Defendant was an experienced driver. There is no evidence he had been drinking or was otherwise unfit to drive. There is no evidence of unusual speed.

There were three surviving witnesses to the collision—defendant, Mrs. Bealmer and her daughter. The Bealmers were

following the truck in an automobile. The daughter was driving. They both fix speed of their car at 45 miles per hour. The daughter testifies she was gaining on the truck. The mother first says "she was maybe gaining a little" but finally concludes they were not gaining on the truck. The mother does testify the truck "wasn't going over 45." Neither of the Bealmers saw the truck weaving around in the road and the daughter did not notice any erratic operation of the unit.

Neither of the Bealmers saw the farm tractor until after the collision. The daughter testifies (as a witness for defendant) she saw the truck start to pull into the south (passing) lane "and I thought he did go in but I am not completely sure because it was so long ago I can't remember everything." Mrs. Bealmer as a witness for plaintiff says she did not see the truck on the south side of the road but was not looking all the time and it might have been there. The daughter "saw the truck jackknife and go across the north lane into the ditch and sort of turn around." Mrs. Bealmer also says she saw the truck headed at a northwest angle across the north lane. When the daughter stopped at the scene of the accident defendant asked her to get help and she did.

The above is a summary of the testimony of Mrs. Bealmer and her daughter. They lived on a farm a few miles from the Mallinger farm and may have been somewhat reluctant to testify against plaintiff. (Decedent's mother was administratrix.)

Defendant testifies he first saw the farm tractor when it was about one-fourth mile ahead of him. It was traveling 12 to 15 miles per hour, the truck "around 40, in fourth high." When he came within about 100 feet of the tractor defendant says he reduced his speed to 25 or 30 miles per hour at the most, shifted into third and then second high, and turned into the south lane to pass decedent, when in that lane he heard an impact on the right (north) side of his truck which jerked the steering wheel out of his hands, caused his tractor to jackknife and swing him crossways into the north lane where there was a second impact between the truck and the farm tractor.

On cross-examination defendant testifies: "I might have said after the accident that I hit the left rear wheel of the

farm tractor but I am convinced now I did not. * * * I said I knew of no reason why I hit the farm tractor. * * * I now contend my front end did not hit the farm tractor. * * * My outfit started to sway and rock when I cut sharp to go around it. * * * It was while I was trying to straighten out my outfit that the impact occurred."

A highway patrolman who investigated the accident expresses the opinion the points of collision on the vehicles were the left rear tire of the farm tractor and the right front bumper and headlight of the truck. He also found oil and grease on the north half of the pavement.

Defendant's testimony is that the contact between the right front end of his truck and the farm tractor occurred after the initial impact when the steering wheel was jerked out of his hands and his unit jackknifed into the north lane. Evidence of the Bealmers and the patrolman as to how the accident occurred may readily be reconciled with that of defendant.

We have referred to virtually all the evidence as to how the collision occurred. Of course the burden rested on plaintiff to make a case for the allowance of exemplary damages. The testimony most favorable to plaintiff does not support a finding that defendant ran directly into the rear of the farm tractor. The impact occurred while defendant was attempting to pass. Perhaps he did not turn out to the left as far or as soon as he should have done but he did turn out before contact occurred between the left rear tire of the tractor and the right of the truck, whether it was its right side or right front. That there is evidence of negligence is clear but we find no substantial showing of wanton, reckless or grossly negligent conduct, with utter disregard of consequences.

At the close of plaintiff's evidence and again at the close of all the evidence defendant moved for a directed verdict as to the claim for exemplary damages on the ground the evidence was insufficient to support their allowance. This was the equivalent of a motion to withdraw the issue from jury consideration. Defendant urged a like contention by a request for an instruction to the jury and in his motion, under rule 243(b), Rules of Civil Procedure, for judgment notwithstanding the verdict. The issue should have been withdrawn.

We have considered the precedents plaintiff cites. The only Iowa case is Sebastian v. Wood, supra, 246 Iowa 94, 66 N.W.2d 841, where defendant had pleaded guilty to driving his motor vehicle while intoxicated and testified upon the trial which resulted in the appeal that he was intoxicated. Witnesses testified defendant drove on the wrong side of the road four or five times in a half mile shortly before the collision. The present case is not comparable to Sebastian v. Wood.

Cases from other jurisdictions cited by plaintiff are summarized in annotation, 62 A. L. R.2d 813, 822, 823. We will comment on them briefly. The facts in Jones v. Colvard, 215 Ala. 216, 109 So. 877, are not fully stated in the opinion and in any event the court concluded the damages, after a remission ordered by the trial court, were within the limit of actual damages shown in evidence. Anything in American Fidelity & Casualty Co. v. Farmer, 77 Ga. App. 166, 48 S.E.2d 122, regarding allowance of exemplary damages seems to be dictum since the trial court did not submit the issue to the jury.

Chapman v. Associated Transport, 218 S. C. 554, 63 S.E.2d 465, and Hicks v. McCandlish, 221 S. C. 410, 70 S.E.2d 629, are the remaining cases cited by plaintiff. Apparently the rule in South Carolina is that violation of a statute is sufficient to carry the issue of exemplary damages to the jury under proper instructions and may warrant the inference of reckless, willful or wanton conduct. Fisher v. J. H. Sheridan Co., 182 S. C. 316, 189 S.E. 356, 359, 108 A. L. R. 981, 986; Jeffers v. Hardeman, 231 S. C. 578, 99 S.E.2d 402, 404. Violation of such statutory rules of the road as are pertinent here have not been regarded as more than negligence in Iowa.

Clanton v. Chrisman, 174 Okla. 425, 51 P.2d 748, 750, seems to support the conclusion reached in this division.

■ IV. In our opinion the error in submitting to the jury the claim for exemplary damages, on which a separate verdict was returned, may be cured by setting aside the recovery therefor. Defendant's counsel conceded this in oral argument. This view finds support in Boyle v. Bornholtz, supra, 224 Iowa 90, 94, 275 N.W. 479, although there the allowance of exemplary damages was set aside by the trial court with our subsequent

approval. See also Bookhart v. Younglove, 207 Iowa 800, 807, 808, 218 N.W. 533; Cubbage v. Roos, 181 S. C. 188, 186 S.E. 794.

This disposition of the case seems to be within at least the spirit of rule 349, Rules of Civil Procedure. No useful purpose would be served by a new trial of the issue of exemplary damages nor of the whole case. The material facts relating to such issue were evidently fully developed at the trial and the ends of justice would not be served by a new trial.

The judgment for actual damages is affirmed, the judgment for exemplary damages is reversed. The cause is remanded for final judgment accordingly. One third the costs in this court to be taxed to plaintiff (appellee) and two thirds to defendants (appellants).—Affirmed in part, reversed in part and remanded.

All JUSTICES concur.