Joseph O. **PARRIS**, Plaintiff-Appellee,

v.

**ST. JOHNSBURY TRUCKING CO.**, Inc., Defendant-Appellant.

Nos. 339, 340, Dockets 31850, 31851.

United States Court of Appeals
Second Circuit.

Argued April 1, 1968.

Decided May 27, 1968.

Samuel S. Bloomberg of Samuelson & Bloomberg, Burlington, Vt., for plaintiff-appellee.

James J. McNamara of McNamara, Fitzpatrick & Sylvester, Burlington, Vt., for defendant-appellant.

Before MOORE, WOODBURY * and SMITH, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

■ Appeal from a judgment for the plaintiff on a cross-claim in an automobile personal injury case, District of Vermont, Ernest W. Gibson, Chief Judge. The jury brought in two verdicts: $35,000 compensatory damages and $8,300 punitive damages. Though Parris and St. Johnsbury Trucking Co., Inc. are both Vermont citizens, they are plaintiff and defendant on a cross-claim and the federal courts have ancillary jurisdiction since diversity does exist with respect to the main claim, brought by the administrators of the estates of Mr. and Mrs. Curler against St. Johnsbury and Parris. The main claim was settled during trial.

St. Johnsbury's employee-truck driver, while driving at some 45–50 miles an hour along a wet, but not icy, straight, nearly level two-lane highway, crashed into the rear of a car driven by Parris, hurling it into the Curler car traveling in the opposite direction, causing the deaths of the Curlers and injury to Parris. Parris was stopped on the right hand side of the road waiting to make a left turn, with his left turn signal blinking. The truck driver was promptly dismissed from employment after the accident.

Two primary questions are raised by this appeal: (1) the propriety of an award of punitive damages in a case of this sort and (2) the liability of a corporation for punitive damages for the negligence of its servant in the performance of his duties. St. Johnsbury also complains of the amount of the compensatory award.

Appellant has failed to cite any Vermont case in which punitive damages were awarded because of negligence. In Willett v. Village of St. Albans, 69 Vt. 330, 38 A. 72, 74 (1897), the court stated that punitive damages might be awarded where defendant's negligence "was so gross as to amount to wanton and willful disregard of the rights of the plaintiff." Accord, Walsh v. Segale, 70 F.2d 698 (2 Cir. 1934) (interpreting Vermont law). This language is common to most of the cases dealing with the question of the appropriateness of an award of punitive damages in automobile collision cases. In fact situations similar to the instant one, different courts have reached quite different results as to when negligence is so gross as to amount to wanton disregard of plaintiff's rights. Compare Walsh v. Segale, supra, Douglas v. Prescott, 31 Ga.App. 684, 121 S.E. 689 (1924), Mallinger v. Brussow, 252 Iowa 54, 105 N.W.2d 626 (1960), Clanton v. Chrisman, 174 Okl. 425, 51 P.2d 748 (1935), with Busser v. Sabatasso, 143 So.2d 532 (Fla.Dist.Ct.App.), cert. denied 147 So.2d 530 (Fla.1962), Chapman v. Associated Transport, 218 S.C. 554, 63 S.E.2d 465 (1951). There are precedents outside Vermont to support a holding either allowing or denying punitive damages in a case such as the case at bar. The latter view tends to restrict the awarding of punitive damages in automobile negligence cases to those cases in which the negligent driver's conduct evidences real disregard for the safety of others. More than the inattentiveness involved in the instant case is usually necessary, such conduct as drunken driving and grossly high speed.

■ Assuming that we did agree that the driver's conduct merited a charge on punitive damages, we still must decide whether a corporate defendant is liable for punitive damages as a result of the unratified acts of its servant performed within the scope of his employment. Vermont, like many other states, makes employers vicariously liable to compensate for the intentional and negligent damages caused by their employees. Ploof v. Putnam, 83 Vt. 252,

* Of the First Circuit, sitting by designation.

75 A. 277, 26 L.R.A.,N.S., 251 (1910). Yet, where punitive damages are concerned, this rule is not universally applicable. Some states do apply the general rules of vicarious liability to punitive damages. Morris, "Punitive Damages in Personal Injury Cases," 21 Ohio State L.J. 216, 220–21 (1960) and cases cited therein. Other states apply a complicity rule; the corporation is held liable only where a superior officer has ordered, participated in, or ratified the outrageous misconduct. Morris, supra, at 221. This latter rule seems consistent with the rationale behind the concept of punitive damages. Either as a basis for punishment or for deterrence of wrongdoers, some deliberate corporate participation should be shown before this sanction is applied. This seems historically the rule in Vermont. See Sparrow v. Vermont Savings Bank, 95 Vt. 29, 112 A. 205 (1921), Willett v. Village of St. Albans, supra, Wells v. Boston & M. R. R., 82 Vt. 108, 71 A. 1103 (1909). Lanfranconi v. Tidewater Oil Co., 376 F.2d 91 (2 Cir.), cert. denied 389 U.S. 951, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967), while it upheld a punitive award against a corporation, did not discuss the basis, and in that case the corporation was involved at least up to the level of the district manager.

There is, of course, a policy argument for the contrary rule allowing punitive damages as an incentive to greater care in selection and supervision of motor vehicle operators. This may be particularly apt in the case of large truck or bus operators where there are some advantages to the employer in maintaining rapid movement schedules. The record, however, shows no such situation here, and we have found no indication that the Vermont courts are prepared to make such a change from the rationale of the old Vermont cases denying vicarious liability for punitive damages, and are not of the opinion that they would or should do so. See Bernhardt v. Polygraphic Co. of America, 350 U.S. 198, 76 S.Ct. 273,

100 L.Ed. 199, (1956). In these circumstances we hold it error to allow the jury to assess such damages here.

■ The compensatory award is ample but in view of the testimony of Dr. Otis, 73A–76A, it is not excessive.

Parris was 32 years of age, employed in a power line construction outfit. He suffered an extensive trauma to the face, neck, groin and side, and permanent numbness to the middle three fingers of his right hand. Damage to his eye resulted in derangement of a tear duct, which caused constant flow of tears and which, together with a weakness in his hand, permanently handicapped him in outdoor work of the type to which he was accustomed, power line pole work. In addition to the evidence of physical impairment and continuing discomfort there was evidence from which the jury could find diminution in earning capacity.

■ Appellant also claims that if this court decides the issue of punitive damages in its favor, the court should reverse the entire judgment below since the punitive damages issue prejudiced its defense on the questions of liability and the amount of compensatory damages. Though it is true that the admission of the kind of evidence relevant to the question of punitive damages would often justify reversal in an ordinary negligence case, here we fail to find any prejudice. There have been separate verdicts and appellant's contention is not founded in any showing of likelihood of prejudice here. We may assume that the jury properly followed the instructions given it by the judge and considered the separate verdicts separately. The interjection of the punitive damages issue added nothing substantial to the picture.

We reverse the judgment for punitive damages, affirm the judgment for compensatory damages in the sum of $35,000, with interest and costs. No costs on appeal to either party.