**Fred H. TOWNSEND and Ruth A. Townsend, husband and wife, Appellees,**

**v.**

**MID–AMERICA PIPELINE COMPANY, Appellant.**

**No. 53310.**

Supreme Court of Iowa.

May 6, 1969.

Walter F. Rismiller, Tipton, and Herrick, Langdon, Belin & Harris, by Herschel G. Langdon, Des Moines, for appellant.

D. C. Nolan and John Nolan, Iowa City, for appellees.

RAWLINGS, Justice.

From assessment of damages by condemnation commission for taking of pipeline right-of-way across plaintiffs' land, they appealed to the district court. Trial to jury resulted in a $75,000 verdict based award. Defendant appeals. We affirm.

Plaintiffs own a 145 acre farm in Cedar County, containing substantial limestone deposits. Defendant company condemned a 50 by 1400 foot strip of that land.

On appeal to the district court plaintiffs first alleged damage for the partial taking amounted to $29,000. The morning trial commenced they, with trial court's permission, over timely resistance, amended their petition claiming $125,000.

Plaintiffs' evidence discloses they acquired the farm in 1952 for $14,900. Since 1961 an "ag" quarry has been operating, under lease arrangements, on a part of the property not involved in these proceedings. The same operators also hold a lease right to conduct limestone quarry operations on that portion of the farm involved in the subject condemnation, but no such work has as yet been done in that area.

After commencement of this action, plaintiffs had a number of test holes or drillings made in the vicinity of the pipeline. Core samples were thus obtained and analyzed.

Mr. Fred Dorheim, an economic geologist testified, upon the basis of this analysis, the land contained hard LaClaire limestone of very high quality, and production of 75,000 to 100,000 tons of rock annually would reasonably be expected from a quarry the size and type of plaintiffs' farm. He also expressed an expert opinion relative to quantity of rock in the area affected by the pipeline easement. Additional testimony by this witness discloses limestone is quarried by blasting, the proximity of these operations to a pipeline being governed by amount of dynamite used, some done at least 250 feet away, others not nearer than 500 feet.

Plaintiffs called three other experts. They testified concerning value of the land before and after the taking.

One of these witnesses, Ralph West, for 21 years a manager of farm mortgages for an insurance company requiring him to appraise farm property stated, over objection, the farm was worth $157,000 before and $30,000 after the taking, resulting in damage of $127,000.

Another valuation witness for plaintiff was Lyle Grove, an experienced real estate broker. Defendant's objection being overruled, this witness said the before taking value was $150,000, the after value $30,000, net damage being $120,000.

Gene Schlaegel, a law graduate and knowledgeable real estate man with 22 years experience, also testified for plaintiffs. According to the record, neither Mr. Schlaegel's qualifications as an expert nor his testimony relative to value were challenged by defendant. This witness stated the Townsend property was reduced in value from $154,000 to $64,000 by the taking, the resultant damage being $90,000.

Defendant offered testimony of two experts. They testified plaintiffs' property was "Shelby or poor, agricultural land" and the taking by defendant for pipeline purposes did not lower its farm market value.

As aforesaid the jury found for plaintiffs in the amount of $75,000. Defendant moved for a new trial.

After hearing, this motion was overruled. To the extent determinable from defendant's rather cumbersome assignments it contends on appeal, trial court erred in, (1) allowing plaintiffs to belatedly amend their petition; (2) overruling its objections to opinion testimony relative to value; (3) permitting use of an improper standard in determining damages; (4) finding no prejudicial jury misconduct; and (5) holding the verdict is not excessive.

Avoidance of duplication dictates these errors be not considered in the order assigned above.

I. Defendant argues trial court should have sustained its motion for a new trial because the award, resulting from passion and prejudice, is excessive.

■ Dealing with that subject in Shover ˌv. Iowa Lutheran Hospital, 252 Iowa 706, 718, 107 N.W.2d 85, 92, this court said: "In considering the contention the verdict is so excessive as to shock the conscience and show it is the result of passion and prejudice we must take the evidence in the aspect most favorable to plaintiff which it will reasonably bear. We must also give weight to the fact the trial court, with the benefit of seeing and hearing the witnesses, observing the jury and having before it all the incidents of the trial, did not see fit to interfere. Fredrickson v. Heline, 1960, 252 Iowa 92, 106 N.W.2d 74, and citations.

"The allowance of damages is primarily for the jury and we will not interfere therewith unless it clearly appears the verdict is unconscionable, the result of passion and prejudice, or not warranted by the evidence. Von Tersch v. Ahrendsen, 251 Iowa 115, 123, 99 N.W.2d 287, 292 [79 A. L.R.2d 267]; Hamdorf v. Corrie, 251 Iowa 896, 907, 101 N.W.2d 836, 843; Mallinger v. Brussow, supra, 252 Iowa 54, 57, 105 N. W.2d 626, 628; Fredrickson v. Heline, supra." See also Knudsen v. Merle Hay Plaza, Inc., Iowa, 160 N.W.2d 279, 286–287, and Beyer v. City of Dubuque, 258 Iowa 476, 489, 139 N.W.2d 428, 18 A.L.R.3d 416.

In this regard plaintiffs offered testimony to the effect there existed no comparable sales by which to determine fair market value, requiring resort to actual or intrinsic value of the land immediately before and after the taking. On that premise, as heretofore disclosed, plaintiffs' witnesses fixed the damage at a low of $90,000, a high of $127,000.

On the other hand, defendant sought determination of damage on a fair market value basis. And, as revealed supra, its witnesses accordingly found no damage resulted from the taking.

Trial court, in effect, instructed the jury the difference in fair market value immediately before and after taking is ordinarily the proper measure of damages, but if it be found no such standard exists, then the difference between actual or intrinsic value before and after taking would be the proper basis upon which to evaluate damages.

■ Understandably defendant did not challenge this instruction. As we said in Nedrow v. Michigan-Wisconsin Pipe Line Co., 245 Iowa 763, 768–769, 61 N.W. 2d 687, 690: "The foundation finding for the damage award in condemnation is the value of the property before condemnation. If it can be established that there is a market for the property, by evidence of a general buying and selling of that kind of property, the first finding will be the market value. But if the nature of the property be such that no market for that kind of property can be ascertained or established, the primary finding will be intrinsic or actual value of the property. Once the value is found before condemnation, either market or actual as the case may be, the next question is the value after condemnation. If the whole of the property is taken the first finding of value is the measure of recovery. If part of the property is taken the measure of recovery is the difference between the finding of value of the whole property before condemnation and the finding of value of the remaining property after condemnation. These general principles are all firmly established by all of the authorities. 29 C.J.S., Eminent Domain, §§ 136–139; 18 Am.Jur., Eminent Domain, Sec. 242."

Having heard evidence ranging from no loss in market value, to an actual value loss from a low of $90,000 to a high of $127,000, the jury, as aforesaid, returned a $75,000 verdict.

■ It is to us evident, as trial court found in denying defendant's motion for

new trial, the verdict is supported by ample and adequate evidence. Being within the testimonial range, we cannot say it is excessive.

II. But defendant asserts its objections to the opinion evidence of valuation experts called by plaintiffs should have been sustained, in that an erroneous standard for measurement of damages was used by them.

More specifically it is urged, these witnesses were permitted to multiply a royalty figure by amount of limestone in arriving at before and after taking values.

It is argued this violates the rule set forth in Nedrow v. Michigan-Wisconsin Pipe Line Co., 245 Iowa 763, 61 N.W.2d 687, prohibiting use of the unit rule. We there said, 245 Iowa loc. cit. 776, 61 N.W. 2d loc. cit. 694: "* * * value cannot be established by finding the amount of rock in place and measuring the recovery by the amount rendered unquarriable by the taking, multiplied by the royalty figure."

■ However, it is also well established, the presence of mineral deposits in land is a proper *element* to consider in valuing property. That is clearly spelled out by this statement in Nedrow, supra, 245 Iowa at 770–771, 61 N.W.2d at 691: " 'With remarkable unanimity the courts hold that in determining the compensation in eminent domain proceedings for the land to be condemned, the existence of valuable mineral deposits in the land taken constitutes an element which may be taken into consideration if and in so far as it influences the market [or actual] value of the land. * * *

" 'Occasionally the rule has been expressed by the negative statement that the award may not be reached by separately evaluating the land and the deposits, since the latter, being only one element among many in determining the market [or actual] value of the land, cannot be considered as an independent factor the value of which is

to be simply added to the value of the land.' "

Our question, briefly stated, is whether plaintiffs' value witnesses, and in turn the jury, used the so-called "unit rule" alone in determining before and after taking values, or considered the limestone deposit as an *element* in determining their respective before and after taking values.

■ In Comstock v. Iowa State Highway Commission, 254 Iowa 1301, 121 N.W. 2d 205, this court was confronted with a similar question. There an expert witness testified he had used quantities, production costs, and sales price of sand and gravel in arriving at a damage figure in connection with a condemned leasehold. The figures used by him were startingly similar to computations under the unit rule. In resolving the problem we said, 254 Iowa at 1308, 121 N.W.2d at 209: "As hereinafter discussed the so-called unit rule is not the measure of damage. Neither is the contemplated profit from the use of real estate. All of the various factors, however, may be considered in determining before and after value. Multiplying production units by the market price per unit does not fix value but the producing ability of real estate has a definite bearing on value. * * *

"The value of a removable product resulting in complete depletion of value is proper evidence in proving before and after value. It is not improper just because the result is the same as the application of the unit rule."

But in the case before us there is no similarity between the before and after values expressed by plaintiffs' witnesses, and a multiplied royalty figure times the estimated limestone production.

Moreover, the rule as stated in Nedrow, supra, permits consideration of mineral deposit values as one of many elements in determining value.

■ Here plaintiffs' witnesses all testified they were valuing the total farm, in-

cluding rock. And, unlike Nedrow, supra, they all testified as to ultimate before and after taking value, using mineral deposit and production only as an element in arriving at their respective conclusions.

Furthermore, the jury was told by instruction 8: "Evidence has been admitted as proper items for consideration by the jury of the presence of limestone in substantial amounts in the land comprising the Plaintiffs' premises, including the portion thereof taken by the Defendant for easement right-of-way purposes. You are instructed that these items are not to be considered as in themselves affording a basis or measure of recovery, but as explaining and supporting the estimates made of values of said real estate as a whole before and after the taking."

As stated in Comstock v. Iowa State Highway Commission, supra, 254 Iowa loc. cit. 1315, 121 N.W.2d loc. cit. 214: "It would thus appear that the instructions to the jury carefully guarded against the use of the unit rule in determining plaintiff's damage."

Finally on this subject, we are satisfied the jury verdict does not reflect an amount determined by improper use of the unit rule.

III. This brings us to the challenged competency of plaintiffs' witness, Ralph West, to testify as an expert.

He, as heretofore revealed, had been employed as a manager of farm mortgage holdings by an insurance company for 21 years. That work required loan values of given properties be evaluated and determined by him. Mr. West, a member of Farm Managers Rural Appraisers, and Iowa State Association of Rural Appraisers, had also effected appraisals for the highway commission, estates, and private individuals. This witness summarized his qualifications by relating he had been engaged in land appraisal work for 21 years, was personally acquainted with the Townsend property, and had heard the testimony of the geologist concerning limestone deposits.

On voir dire by defendant, Mr. West stated, only one prior appraisal of limestone laden property had been made by him, and he had no knowledge of geology, rock formations or quarry properties. Defendant objected to any evidence by this witness concerning value of limestone, and requested he be restricted to value of the land as farm property. That objection was overruled.

The witness then testified, in appraising property he uses either the market or economic value. He knew of no comparable sales of farms with limestone deposits and related that in appraising plaintiffs' farm he used economic value, defined by him as the best use of the property based on a period of years coupled with average prices and management. When asked to give his opinion of the value of Townsends' land, including existent limestone as testified to by the economic geologist, supra, he stated, as aforesaid, the before and after taking values respectively were $157,000 and $30,000.

As best we can determine, defendant now argues Mr. West was not qualified to express an opinion based in part on presence of limestone deposits.

█ In that regard it is well established, in this jurisdiction, the admission or exclusion of expert opinion testimony rests largely in the discretion of trial court, and we will not interfere unless a clear abuse thereof is shown. Dougherty v. Boyken, Iowa, 155 N.W.2d 488, 491; Comstock v. Iowa State Highway Commission, supra, 254 Iowa 1301, 1307, 121 N.W.2d 205; and Grismore v. Consolidated Products Co., 232 Iowa 328, 342, 5 N.W.2d 646.

Also, in Grismore v. Consolidated Products Co., supra, 232 Iowa at 344, 5 N.W.2d at 655, this court said: "An expert's opinion is received because and whenever his knowledge of the subject matter is greater than the jury's, and aids them or is proper or essential to their information * * *."

More recently we defined an expert as one so qualified by study, training, or experience in a particular subject or field of endeavor that he has acquired such special knowledge as will enable him to form a definite opinion of his own on matters which persons lacking knowledge or training cannot correctly decide. Dougherty v. Boyken, supra, at 155 N.W.2d 490.

With regard to the matter at hand see also Marean v. Petersen, 259 Iowa 557, 563–564, 144 N.W.2d 906.

 Unquestionably Mr. West was a professional in the field of land values and had familiarized himself with the Townsend property, including existence of limestone. Under these circumstances we find no abuse of discretion by trial court in permitting this witness to express his opinion relative to value of the property in question. This, in turn, serves to dispose of defendant's objections to the testimony of other expert witnesses called by plaintiff.

IV. Defendant next argues the court erred in refusing to grant a new trial because of claimed misconduct of three jurors in driving past plaintiffs' farm. Defendant filed affidavits given by two of these jurors. A court hearing followed concerning this matter.

One juror, Melvin Lehrman, stated that during a trial recess he and two other jurors, having some "spare time", decided to drive out and locate the Townsend farm. When asked if viewing the property had anything to do with his decision he answered in the negative.

Testimony of another juror, Glenn Dierks, was substantially the same as Mr. Lehrman's. Mr. Dierks also said he was not sure they actually saw the subject property. While driving past what they supposed to be the land in question he saw different colored fence posts, assumed by him to denote the presence of a pipeline.

The third juror, Delmar Frick, like Mr. Dierks, was not sure he saw plaintiffs' farm. Additionally he said that merely driving past the property did not influence his verdict.

Trial court heard this testimony, observed the parties testifying, and found the trial recess trip did not influence these jurors in arriving at a verdict.

 Dealing with a comparable situation we said in Mead v. Scott, 256 Iowa 1285, 1290, 130 N.W.2d 641, 644: "Of course it was misconduct for the three jurors to visit the place of the accident. Rule 194, Rules of Civil Procedure, in pertinent part, provides: 'When the court deems proper, it may order an officer to conduct the jury in a body to view any * * * place where a material fact occurred, and show it to them.' But misconduct of the jury is not a ground for new trial unless it 'materially affected * * * substantial rights' of the 'aggrieved party' or 'prevented the movant from having a fair trial' (rule 244, R.C.P.).

"We have held many times that to justify a new trial because of misconduct of jurors it must appear the misconduct was calculated to, and it is reasonably probable did, influence the verdict. Also that the trial court has a good deal of discretion in passing on such a ground. We will not interfere with his ruling unless it is reasonably clear such discretion has been abused. (Authorities cited.)

"The trial court presumably found the jurors' misconduct probably did not influence the verdict or prevent plaintiff from receiving a fair trial. It does not clearly appear this was an abuse of discretion."

 Furthermore misconduct on the part of the three jurors in driving past plaintiffs' farm is not alone sufficient to warrant a new trial. It must also appear prejudice resulted therefrom, and defendant was thereby prevented from having a fair trial. See State v. Little, Iowa, 164 N.W.2d 81, 83.

 Trial court found no prejudice was shown. We agree, and now hold, trial

court did not err in refusing to grant a new trial on this ground.

V. Next to be considered is defendant's contention, trial court erroneously permitted plaintiffs to amend their petition the morning trial commenced. As heretofore stated the amendment increased damages claimed from $29,000 to $125,000, and defendant argues this served to substantially change the issues. We are not so persuaded.

Rule 88, R.C.P., 58 I.C.A. provides: "Any pleading may be amended before a pleading has been filed responding to it. The court, in furtherance of justice, may allow later amendments, including those to conform to the proof and which do not substantially change the claim or defense. The court may impose terms, or grant a continuance with or without terms, as a condition of such allowance."

On the subject at hand we said in Dailey v. Holiday Distributing Corporation, Iowa, 151 N.W.2d 477, 482: "A trial court has broad discretion in permitting or denying amendments and unless the discretion is abused we will not interfere.

"And to allow is the rule, not the exception. See Claeys v. Moldenschardt, Iowa, 148 N.W.2d 479, 483; Durant Elevator Co. v. S. J. Hoffman & Sons, Iowa, 145 N.W.2d 25, 26–27; and Webber v. E. K. Larimer Hardware Co., 234 Iowa 1381, 1389, 15 N.W.2d 286.

"However, an amendment should not be permitted under rule 88, R.C.P., if it materially changes the issues involved."

Determination of damage resulting from a partial taking of plaintiffs' land was the sole issue presented by the original petition. That was the same issue after amendment. We therefore find no abuse of discretion by trial court in permitting plaintiffs to amend. In support hereof see Arenson v. Butterworth, 243 Iowa 880, 891, 54 N.W.2d 557.

VI. Other arguments advanced by defendant, interwoven with its assignments of error, have been considered and found to be without merit.

Finding no reversible error this case is—

Affirmed.

All Justices concur.